## BLOODGOOD *vs.* THE MOHAWK AND HUDSON RAIL ROAD COMPANY.

The act of incorporating the *Mohawk and Hudson Rail Road Company*, authorizes the company, by their agents, surveyors and engineers, to enter upon the lands of *individuals*, for the purpose of *making examinations and surveys* so as to determine the most advantageous route for the proper line or course whereon to construct their rail road or ways, *previous* to acquiring title to the lands required, or the assessment and payment of damages. So they may enter in like manner *previous* to acquiring the title to the lands, or having the damages appraised and paying the same *for the construction* and maintenance of their rail road or ways, and the accommodations requisite and appertaining to them. The purchase of the land, or the payment of the appraised damages is a *condition precedent to the vesting of the fee simple* of the land required for the road, &c. in the corporation ; *but not to their right to enter* upon for the purpose of making surveys, or to their right to take possession of and use it for the construction and maintenance of their road.

It has never been deemed necessary that the *compensation, which the constitution requires to be made* for *private property* taken for *public use*, should be *actually paid* before entering upon or taking possession of the property. If legal provision for compensation is made, the spirit of the constitution is complied with, and the property which is required for public use may lawfully be entered upon and possession thereof taken.

*It seems* also that a law would not be deemed unconstitutior 1 which authorized private property to be taken for public use, although it entirely omitted to provide the mode of making compensation ; and that the officers of

UTICA,
July, 1835.

Bloodgood
v.
M. & H. R. R.
Company.

government or other individuals designated in the act, who should take possession of property under such circumstances, would not be *trespassers ;* that the owners would have a just claim for compensation, which it was to be presumed would be acknowledged by the legislature and paid.

Acts of the legislature authorizing rail road companies to enter upon, take possession of, and use the lands of individuals for the construction and maintenance of their roads, against the will and without the consent of the owners of the lands, are valid and *constitutional.*

The assessment and payment of damages being a *condition subsequent* to the entry, not only for the purpose of surveying but of making and constructing the road, *it was held,* that it was not necessary for the defendants in their plea to allude to such assessment and payment.

*It was further held,* if, notwithstanding that the original entry was lawful, the defendants have been guilty of such delay, in taking the measures prescribed by the act to obtain title to the land and to ascertain and pay the plaintiff's damages, as to deprive them of the benefit of such entry and render them trespassers *ab initio,* it was incumbent upon the plaintiff to have *replied* the facts necessary to present that question. Whether an unreasonable delay in paying the plaintiff's damages would render the defendants trespasses *ab initio,* the court doubted ; but that the plaintiff would have an ample remedy in such a case, in some form of action, they had no question.

CONSTRUCTION *of rail road laws.* The plaintiff declared in *trespass quare clausum fregit,* alleging that the defendants by their servants entered his closes with carriages, &c., broke down and destroyed his fences, and dug and subverted the soil, &c. The defendants justified under their act of incorporation, (*Statutes of* 1826, *page* 286, *&c.*) by the seventh section of which act it is enacted " That the said corporation be and they are hereby authorized, by their agents, surveyors and engineers, to cause such examinations and surveys to be made, of the ground lying between the Mohawk and Hudson rivers within the aforesaid limits, prescribed by the *first* section of this act, as shall be necessary to determine the most advantageous route, place or places, for the proper line, course, road and way, whereon to construct their single or double rail road or ways ; and it shall be lawful for the said corporation to enter upon and take possession of and use, all such lands and real estate as may be indispensable for the construction and maintenance of their single or double rail road or ways, and the accommodations requisite and appertaining to them ; and may also receive, hold, and take all such voluntary grants and donations of land and real estate as shall be made to the

said corporation, to aid in the construction, maintenance and accommodation of their single or double rai' road or way: PROVIDED that all lands or real estate thus entered and taken possession of, and use by the said corporation, and which are not donations, *shall be purchased by the said corporation* of the owner or owners of the same, *at a price to be mutually agreed upon betwixt them ; and in case of a disagreement of the price*, it shall be the duty of the governor of the state, upon a notice to be given him by the said corporation, to *appoint three commissioners, &c. to determine the damages* which the owner or owners of the land or real estate so entered upon by the said corporation has or have sustained by the occupation of the same ; and *upon payment* of such damages," (with the costs of the appraisement, or upon depositing the amount of such damages in a bank in the city of Albany to the credit of such owner or owners, notice thereof being given) " then the said corporation shall be deemed to be seized and possessed of the fee simple of all such land or real estate as shall have been appraised by the said commissioners ; and it shall be the duty of the said commissioners or a majority of them to deliver to the said corporation a written statement of the award or awards they shall make, with a description of the land or real estate appraised, to be recorded by the said corporation in the clerk's office of the county where the land or real estate may lie." The defendants pleaded *that they entered* the several closes, &c. *for the purpose of causing such examinations and surveys to be made* as might be necessary to determine the most advantageous route, &c. for the proper line, course, road and way whereon to construct their road or ways ; *and for the purpose of taking possession of and using* so much of the several closes, and of the earth and soil thereof, as might be indispensable for the construction and maintenance of their rail road and ways and the accommodations requisite and appertaining to them, and did then and there take possession of and use so much of the several closes, and of the earth and soil thereof, as was indispensable for the purposes aforesaid, as they lawfully might ; which are the said several trespasses, &c. To this plea the plaintiff interposed a *general demurrer*, and the defendants joined.

UTICA,
July, 1835.

Bloodgood
v.
M. & H. R. R.
Company.

*J. T. B. Van Vechten & S. Stevens,* for the plaintiff.

*B. F. Butler,* (attorney general of the United States,) for the defendants.

*By the Court,* SUTHERLAND, J. The plea demurred to sets out substantially the enacting part of the *seventh section* of the act by which the defendants were incorporated, and the averments which it contains were undoubtedly sufficient to bring them within its provisions, and to justify the trespasses complained of, unless the enacting clause is qualified and restrained by the *proviso* contained in the same section. It was obviously the intention of the legislature to authorize the corporation to enter upon and take possession of such land as they should think necessary for the route and construction of their road, without requiring as a condition precedent that the same should be appraised and paid for in the manner prescribed in the act. No survey or examination could be made without a previous entry. An examination of the soil by ploughing or digging might be indispensable, in order to determine the practicability of a particular location, or the expediency of adopting one route in preference to another. The quantity of land necessary for the construction of the road, and the damages sustained by the owner in consequence of the taking or occupation thereof by the company, could scarcely in any instance be accurately determined until the road was completed or considerably advanced in its construction. After a particular route was surveyed, it might become necessary to abandon it, in consequence of difficulties from the nature of the soil, or unforeseen obstructions, which were developed during the progress of the work. Many considerations of this description would render it highly expedient that it should not be made imperative upon the corporation to attempt to purchase the land required, from the owners, or to have their damages assessed faster than the road was substantially completed. The act accordingly authorizes them to cause surveys and examinations to be made, and to enter upon and take possession of and use all such lands within the prescribed limits as may be indispensable for the construction of the road, without any

qualification. The *proviso* relates merely to the final and absolute vesting in the corporation of the fee simple of the land thus taken possession of. The land must be purchased or appraised and paid for before the title shall vest in the corporation; but the very terms of the proviso imply a previous possession and appropriation by the corporation of the lands, which it is made their duty to purchase or cause to be appraised and paid for. " Provided that all *lands thus entered upon and taken possession of*, and used, and which are not donations, *shall be purchased by the said corporation*," &c. *The entry and possession and use* are to precede the purchase and appraisal, and the commissioners are to " determine the damages which the owner or owners of the land *so entered upon by the said corporation has or have sustained by the occupation thereof*." The damages are to be the result of the occupation or taking of the land. The occupation must of course *precede* the assessment of the damages. The purchase of the land, on the payment of the appraised damages, is a condition *precedent to the vesting of the fee simple of the land* required for the road, in the corporation ; but not to their right to enter upon and take possession of and use it for the construction of their road. Such appears to me to be the import of this act, even upon those strict rules of construction which are applied to statutes, clearly and confessedly in derogation of common right.

Nor is the right thus given to this corporation, to enter upon and take possession of the land necessary for the construction of their road, before they are required to pay for it and obtain the absolute title, a new and peculiar feature in this act. Under the highway act of 1813, 2 *R. L.* 275, § 16, the commissioners of highways are authorized to lay out roads through improved and cultivated land, without the consent of the owners or occupants thereof, upon the application of twelve respectable freeholders ; and the owners are to procure their damages to be assessed in one of several ways, pointed out in the act. The supervisors are then to cause them to be raised and collected in the town, in the same manner as the other town charges, and to pay them to the commissioners, who are to pay them over to the owner. This process of collecting and paying the damages must necessarily occupy some considera-

ble time ; but in the mean while the land is taken and work-
ed and used, or appropriated by the public as a road.   The
owner acquires a vested and absolute right to damages ; but
the actual payment may not be made for a long time after
he has been deprived of the use and enjoyment of his land.
So also, under the canal law of 1817, p. 302, § 3, the canal
commissioners are authorized to take possession of and use of
all lands, waters and streams, necessary for the construction
of the work, and the damages of the owners are to be *sub-
sequently* ascertained by appraisers.

The general turnpike act of 1813, 1 *R. L.* 231, § 3, is an
*exception to the general rule,* clearly and distinctly marked
by the very terms of the act.   It contains an express pro-
vision that nothing in the act contained shall be construed
to authorize the president and directors of any company to
enter upon any land for the purpose of making their road,
until they shall have paid the damages of the owners of the
land, according to the provisions of the act.

It has never been deemed necessary that the compensa-
tion which the constitution requires should be made for pri-
vate property, when taken for public use, should be actually
paid before entering upon or taking possession of the prop-
erty.   If legal provision for compensation is made, the spirit
of the constitution is complied with, and the property which
is required for public use may lawfully be entered upon
and taken.   I am not aware that this principle has ever
been questioned.   It has already been shown that it has
been sanctioned by the legislature in the highway and canal
acts.   It is explicitly admitted by Judge Spencer and Chan-
cellor Kent, in *Bradshaw* v. *Rogers,* 20 *Johns. R.* 104, 744 ;
and again, by Chancellor Kent, in *Jerome* v. *Ross,* 7 *Johns.
Ch. R.* 343, 344 ; and by this court, in *Wheelock* v. *Pratt,*
4 *Wendell,* 650.   And the opinion is strongly intimated
in those cases, that a law would not be unconstitutional,
which authorized private property to be taken for pub-
lic use, and entirely omitted to provide the mode of making
compensation ; and that the officers of government, or oth-
er individuals, who should take possession of property under
such circumstances, would not be trespassers ; and that the
owner would have a just claim for compensation, which it

was to be presumed would be acknowledged by the legis-
lature, and finally paid. This case does not call for the ex-
pression of any opinion upon that point.

The defendants, then, were authorized, by their act of in-
corporation, to enter upon, take possession of and use all
such lands, within certain prescribed limits, as were indis-
pensable, for the construction and maintenance of their
road. Their plea contains all the averments necessary to
bring them within the provisions of the act, and to justify the
entry and trespasses complained of. The assessment and
payment of the plaintiff's damages for the taking of his land,
was a condition subsequent to their right of entry, for the
purpose not only of surveying, but of making and construct-
ing their road, and which it was not necessary for them to
notice in their plea. 1 *Chitty's Pl.* 228, 229. If, notwith-
standing their original entry was lawful, the defendants have
been guilty of such delay in taking the measures prescribed
by the act, to obtain a title to the land, and to ascertain and
pay the plaintiff's damages, as to deprive them of the bene-
fit of such entry, and render them trespassers *ab initio*, it
was incumbent upon the plaintiff to have replied the facts
necessary to present that question. Whether an unreason-
able delay in paying the plaintiff's damages would render
the defendants trespassers *ab initio*, it is not necessary now
to consider; that question is not presented by the record.
That the plaintiff would have an ample remedy, in such a
case, in some form of action, there can be no question. *Six
Carpenters' case,* 8 *Coke,* 145. 2 *Wils.* 313. 11 *East,* 395.
2 *Ld. Raym.* 1424. 5 *Taunt.* 198. *Croke's Ch.* 446. 2 *Roll.
Abr.* 562. 5 *Barn. & Cres.* 485. 11 *Com. Law R.* 279.

I entertain no doubt of the entire constitutionality of that
provision of the act in question, which authorizes the defend-
ants to take the land which may be necessary for the con-
struction and maintenance of their road, against the will and
without the consent of the owners. Rail roads, though made
by private corporations, when designed for travelling and
transportation, are great public improvements. They can be
made profitable to the proprietors only by affording the most

liberal accommodations to the public.   They are, from their very nature, devoted, and exclusively devoted to the public use—upon such terms and conditions as the legislature, in their wisdom, think reasonable and proper, in order to insure to the owners of the stock an adequate remuneration for the hazard and expense incurred in their construction. But it is not my intention to discuss this branch of the case. The principles applicable to it are very ably and elaborately considered in the arguments of counsel, and in the opinion of the chancellor, in the case of *Beekman* v. *The Saratoga and Schenectady Rail Road Co.*, 3 *Paige*, 45; *vide also* 4 *Wendell*, 650.   It was also intimated by the counsel for the plaintiff, that another case was pending, in which it was their intention more fully and distinctly to present and discuss this point.   The opinion here expressed is not therefore intended to preclude any future discussion of the question.

Judgment for defendant on demurrer, with leave to plaintiff to reply.