May Term, 1838.

RUBOTTOM v. M'CLURE.

---

RUBOTTOM and Another *v.* M'CLURE.

The statute of 1832 respecting the *Wabash* and *Erie* canal, authorises the canal commissioners and their agents to enter upon and use any land, and take any materials necessary for the work, without the owner's consent, and without previously making him compensation. The property must be paid for, however, before the title becomes vested in the state.

The statute above-named, authorising the appropriation of private property for public use, and providing for a subsequent compensation for the property so applied, is not unconstitutional.

If a defendant in trespass *quare clausum fregit* justify under the above-named statute, the plea need not aver that the commissioners had taken the proper measures to ascertain the damages. If such measures have not been taken, and the failure can avail the plaintiff, it should be replied.

If to a declaration in trespass containing several counts, a plea professing to answer the whole declaration only answer one of the counts, and do not aver the identity of the trespasses described in the different counts, it is bad on general demurrer. And such plea, though it contain the averment of identity, is bad on special demurrer.

Where there are several issues, they must be all disposed of before the plaintiff can have final judgment.

4b 505
162 404

ERROR to the *Wabash* Circuit Court.

DEWEY, J.—*M'Clure* declared in trespass against *Rubottom* and *Cassatt.* ·The declaration contains two counts. The first sets out a breach of close, and lays, in aggravation of damages, the cutting down a number of trees, and the taking and carrying away them and a quantity of other timber. The second count is for taking and carrying away other trees.

Thursday,
*May* 31.

64

May Term,     General issue, and three special pleas.  Each of the latter
1838.     professes to answer the whole of the declaration, and avers
RUBOTTOM     that the defendants were in the employment of the commis-
v.     sioners of the *Wabash* and *Erie* canal; that they entered upon
M'CLURE.     the close in the first count of the declaration mentioned, for
the purpose of procuring materials necessary to the construc-
tion of works connected with the *Wabash* and *Erie* canal, and
that, in obtaining such materials, they took " the said trees and
timber in the said plaintiff's declaration mentioned," doing as
little damage as possible; " which are the same trespasses in
the declaration mentioned."  These pleas vary from each other
only in the capacity in which they represent the defendants to
have acted under the authority of the canal commissioners.

General demurrer to all the special pleas,—demurrer sus-
tained,—jury of inquiry called,—damages assessed,—and final
judgment upon the verdict.

In support of the demurrer, it is contended that the statute
upon which the pleas are founded is unconstitutional, and
affords no protection to the defendants for entering upon the
land of the plaintiff for the purposes declared in the pleas.
But in what its unconstitutionality consists, or what are the
arguments to sustain the objection, we are not informed.

It is presumed that, at the present day, no one will question
the right of the legislature to apply the property of individuals
to public use, when " urgent necessity " or " the general inter-
est " may require it.  Chancellor *Kent*, in the 2 vol. 2 ed. of his
Commentaries, p. 339, says,—" The right of eminent domain,
or inherent sovereign power, it is admitted by all publicists,
gives to the legislature the control of private property for pub-
lic uses, and for public uses only."  And to his own high au-
thority, and those he quotes, may be added that of *Blackstone*.
1 Comm. 139.  Whether this right is subject to any restric-
tions by the common law, or the law of nations, (and it proba-
bly is,) need not be examined on the present occasion.  With
us there is no doubt on the subject.  Our constitution requires,
" That no man's particular services shall be demanded, or pro-
perty taken or applied to public use, without the consent of
his representatives, or without a just compensation being made
therefor."

It becomes necessary to inquire whether the statute in question, (Acts of 1832, p. 3,) was passed in violation of this restriction.

The 9th section (which is the part applicable to this case) provides,—"That it shall and may be lawful for said canal commissioners, or each of them, or any of their agents, superintendents, engineers, or workmen acting under them, to enter upon and take possession of, and use, all and singular any lands, waters, streams, and timber, stone, or materials of any kind, necessary for the prosecution of the improvements contemplated by this act; and to make all such canals, feeders, dikes, locks, dams, and other works, as they may think proper in said prosecution, doing, however, no unnecessary damage."

After authorising the commissioners to take grants of such lands or materials as might be required, the section proceeds,—"And in case any lands, &c. taken and appropriated for any of the purposes aforesaid, ·shall not be given or granted to this state, or in case the owner or owners thereof shall be *feme covert*, under age, *non compos*, or out of the state or county, on application of said canal commissioners, or either of them, to any justice of the peace of the county in which such lands be, the said justice shall issue his warrant to the sheriff of the county to summon a jury of 12 inhabitants of the county," &c. The jury is to estimate the damage done to any one by the loss of his land or materials; their inquisition returned to the Circuit Court, and final action being had there upon the question of damages, the statute further enacts,— "And upon the payment by the said canal commissioners of the damages so assessed by said inquisition, (which valuation shall be conclusive on all persons,) which said commissioners are hereby directed to make, the fee-simple of the premises, or the right of such water, stream, or materials, shall be vested in the state."

Without resorting to that liberality of construction which would be justified in interpreting a law having, like this, for its object the advancement of the wealth, prosperity, and character of a state, there is no difficulty in arriving at the meaning of the language just quoted.

The statute clearly authorises the canal commissioners and their agents to enter upon and use any land, and take any materials, necessary to the prosecution of the great work in

trusted to their care, with or without the consent of the owner, and without having previously made compensation. But it also insures to any individual, whose interest may have been made to yield to the public good, remuneration for his loss. Actual payment to him is a condition precedent to the investment of the title to the property in the state, but not to the appropriation of it to public use.

The next inquiry is, does this provision for an after compensation for property thus taken, comply with the restriction in the constitution on this subject?

Not only our own statutes respecting rail-roads and canals, but the laws of several other states whose constitutions contain the restricting clause in relation to compensation, abound with instances of similar legislation. In *Massachusetts*, *New York*, and *Pennsylvania*, to say nothing of other states, such statutes have been passed and are now existing laws. Indeed, our own statutes regulating the location and opening of highways, both under the territorial government and ever since we became a state, have embraced the same principle. They contemplate that individual property—even cultivated fields—may be entered upon by the proper agents for the purpose of viewing, locating, and marking routes for public roads, without the consent of the owner, and without previous compensation. Now this is, in principle, if not in degree, as much an exercise of the right of eminent domain, as the actual and final appropriation of the property to the public use. But our highway laws go further; a road under them may be really opened and travelled by all passengers before the actual payment of compensation. R. C. 1831. Yet the constitutionality of these laws has never been questioned.

Indeed, if such laws be not valid, the unquestionable right inherent in every sovereign power of applying private property to public use—the spirit of the social compact, that individual interest must bow to public good, in many instances, would be of little service to the community. In the construction and preservation of canals, locks, dams, levees, and other improvements, accidents from various causes, which no human sagacity could foresee, and no human power prevent, are continually occurring. To repair injuries arising from these causes, and to check the progress of destruction, instant exertion is necessary. If in such emergencies nothing could be done,

until a bargain could be made for materials, or their value ascertained by the slow process of appraisement, the right of the public to promote the general welfare by the use of private property, would be, indeed, but a crippled and feeble prerogative.

For these and other reasons which might be urged, we conclude that a statute of this state, which authorises the appropriation of private property for the public benefit, and provides for a subsequent compensation for property so applied, is constitutional. The statute under consideration is of this character, and therefore valid.

The same decision upon similar statutes has been repeatedly made in *New-York*, both in her Courts of law and chancery. And it has been more than doubted by the Courts of that state, whether a statute authorising public agents to use private property for the public good, would not be valid even without making any provision for compensation. This point, however, is not under our consideration. *Bradshaw* v. *Rodgers*, 20 Johns. 103, 735.—*Jerome* v. *Ross*, 7 Johns. C. R. 344.—*Wheelock* v. *Young et al.* 4 Wend. 647.—*Beekman* v. *The Saratoga, &c.*, 3 Paige, 45.—*Bloodgood* v. *The Mohawk, &c.*, 14 Wend. 51.

Whether the mode of estimating damages pointed out by the statute under consideration, is the most just and judicious which could have been devised, is not for us to decide. It certainly contemplates the first step in the process to be taken by the canal commissioners, and neither prescribes the time within which it shall be taken, nor puts it in the power of the injured person to hasten it. What would have been the effect of unreasonable delay on the part of the commissioners, it is now unnecessary to determine, because no such delay is shown by the pleadings, and because before the commencement of this suit the statute of 1835, (Acts of 1835, p. 26,) was passed, which placed it in the power of the complaining party to move first in procuring compensation.

It is proper for us to remark, that the special pleas are not defective for not setting forth that the commissioners had taken the measures ordained by the statute of 1832, to ascertain the damages which the plaintiff had sustained. Could that matter have availed the plaintiff, (if in fact it existed,) it should have been shown by the replication. This point has also been decided in *New-York*. 14 Wend. 51.

May Term,
1838.

RUBOTTOM
v.
M'CLURE.

The view we have taken of that branch of the clause of the constitution, which relates to compensation, renders it unnecessary that we should notice the other branch, which has reference to the consent of the representative.

Though we see no ground on which to question the validity of the statute on which the special pleas are founded, these pleas are still substantially defective, and the demurrer was properly sustained.

In actions of trespass, when the declaration contains several counts supposed to be for the same injury, it is usual, in order to avoid the necessity of pleading separately to each count, so to frame one plea as to make it applicable to all the counts. The manner of doing this, is to enumerate in the introductory part of the plea all the trespasses complained· of, and after the statement of *actio non*, &c., to allege that the cause of action mentioned in the first and every other count, specifying that contained in each, is the same cause of action, and not other or different; after which follows the justification. 1 Chitt. Pl. 6 *Am.* from 5 *Lond.* ed. 587.—3 id. 7 *Am.* from 6 *Lond.* ed. 1063, 1064. But a plea even in this form is bad on special demurrer; and when the plaintiff chooses to enforce his right, he can compel the defendant to plead separately to each count. 1 Chitt. Pl. 6 *Am.* from 5 *Lond.* ed. 450, 451. *Edmonds* v. *Walter et al.* 2 Chitt. R. 291. The pleas, in this case, contain no averment of the identity of the cause of action set out in the different counts of the declaration. The consequence is, that though they profess to answer the whole declaration, they only justify the trespass alleged in the first count, and leave that in the second unanswered. They are bad therefore upon general demurrer. 1 Saund. 28, *n.* 3.— Gould's Pl. 358.

An error was, however, inadvertently committed, which must reverse this judgment. The general issue was overlooked, and a jury of inquiry called, without regard to it. *Meylin* v. *Woodford*, 1 Blackf. 286.

*Per Curiam.*—The judgment is reversed, and the proceedings subsequent to the general issue set aside, with costs. Cause remanded, &c.

*H. Cooper* and *J. L. Jernegan*, for the plaintiffs.

*D. H. Colerick*, for the defendant.