# BERNARD S. FOX v. THE WESTERN PACIFIC RAILROAD COMPANY.

CONDEMNATION OF LAND FOR RAILROAD.—The Act of 1861, to provide for the incorporation of railroad companies, as amended in 1863, giving to such companies the right to enter on and proceed with the survey and construction of their roads on private lands while proceedings for a condemnation of the same are pending and before the compensation is paid, upon giving security for the damages when ascertained, is not unconstitutional.

IDEM.—That clause in the Constitution which provides that private property shall not be taken for public use without just compensation, does not prohibit the Legislature from authorizing private lands to be entered on and taken possession of for public use while proceedings for condemnation are pending and before the compensation is paid, upon security being given for the payment of the damages when ascertained.

WHEN LAND IS "TAKEN" FOR PUBLIC USE.—Land is not "taken for public use" in the sense in which the word "taken" is used in the Constitution, until the last act has been performed which, under the mode of condemnation adopted, is required to transfer the title or subject it to the servitude.

IDEM.—The Legislature possess the constitutional power to prescribe the proceedings by which the taking of land for public use shall be effected, and the time at which, in view of the mode adopted, the taking shall be deemed complete.

ACT TAKING LAND FOR PUBLIC USE.—An Act of the Legislature permitting private property to be taken possession of for public use while proceedings for condemnation are pending and before compensation is made, and which further provides that the title shall not pass until compensation has been paid, is not repugnant to the Constitution, whether read as exacting compensation before the taking, or as permitting the taking before compensation is made.

APPEAL from the District Court, Third Judicial District, Santa Clara County.

The facts are stated in the opinion of the Court.

*J. Alexander Yoell*, and *C. T. Ryland*, for Appellant. Title paramount joined to possession being in the plaintiff, and admitted to be in him, the Constitution insures him its safe and exclusive enjoyment until his damages have been ascertained and the compensation awarded has been paid. Parties in possession of land are entitled to compensation before it can be taken for public uses. (*Sacramento V. R. R.* v. *Moffat*, 7 Cal. 572.) That there may be no mistake on this point, we cite *Colton* v. *Rossi*, 9 Cal. 595, wherein it is decided that compensation must be in *advance*. (See, also, *McCann* v. *Sierra Co.*, 7 Cal. 121; 12 Cal. 500; 13 Cal. 306; 14 Cal.

106.)    When the language of the Constitution is unambiguous, no construction should be given to it which is opposed to the express words of the instrument. (*Rowland* v. *Hildreth*, 26 Cal. 162.)    The words, " nor shall private property be taken for public use without just compensation," we submit, are plain and unambiguous.    Section thirty-five of the Act to provide for the incorporation of railroad companies, passed May 20th, 1861, expressly provides that upon the payment or tender of the compensation, " as prescribed in this Act, the real estate described in the report shall become the property of the company for the purposes of its incorporation," which means, and *not before*.    Now one of its purposes is construction, and this Court has said in *Mahoney* v. *San José and San Francisco R. R. Co.*, 29 Cal. 112, that " the payment or tender of the money awarded is a condition precedent to the right of the company *to enter upon the land for the purposes of construction*."    Section thirty-four of said Act, the unconstitutionality of which we contend is apparent, and upon which defendant relies as a defense to its trespass, must have been under consideration by this Court at that time, because, if section thirty-four authorized an entry such as is set up here by defendant, and is constitutional, this Court could hardly have held the quoted language.    To uphold section thirty-four as constitutional, and the defense demurred to herein, based upon it, involves the legal solecism of title paramount in plaintiff, and the power of use, control, disposition, enjoyment and appropriation in defendant, which, as Mr. Justice Baldwin observed in *George* v. *Ransom*, 15 Cal. 323, cannot be constitutional ; or to use the forcible language of Mr. Justice Rhodes in *Boyd* v. *Blankman*, " there would be a time when plaintiff neither owned the land nor the money."    He would not own the land because of the inception of proceedings to take it from him ; nor the money, because it was not *finally* awarded to him.

*S. O. Houghton*, for Respondents.    The taking of private property for public use is the exercise of the right of eminent

domain, which is an inherent sovereign power. (*West River Bridge Co.* v. *Dix*, 6 How., U. S. 539; *Hayward* v. *The Mayor of New York*, 3 Selden, 324.) The Constitution of this State does not require that payment of compensation shall precede the entry. It prescribes that private property shall not be taken for public use without just compensation. And it has been repeatedly held in several of the States which have the same constitutional provision, that payment need not precede the entry, although it is a condition precedent to the vesting of the title. In the case of *Bloodgood* v. *The Mohawk and Hudson River R. R. Co.*, 14 Wend. 56, it was held that "it has never been deemed necessary that the compensation which the Constitution requires should 'be made for private property when taken for public use, should be actually paid before entering upon or taking possession of the property. If legal provision for compensation is made, the spirit of the Constitution is complied with, and the property which is required for public use may lawfully be' entered upon and taken." And this seems to be the settled law in most of the States where the Constitution does not in express terms require that compensation shall be paid before the entry. (*Jerome* v. *Ross*, 7 John. C. R. 343, 344; *Wheelock* v. *Pratt*, 4 Wend. 650; *Case* v. *Thompson*, Id. 637; *Smith* v. *Helmer*, 7 Barb. 416; *Cushman* v. *Smith*, 34 Maine, 247; *Thatcher* v. *The Dartmouth Bridge*, 18 Pick. 501; 1 Penn. 309; 25 Vt. 66; 3 Mich. 506; 4 Blackf. 505; 8 Id. 266.) In some of the States their Constitutions require that compensation shall first be made, before private lands can be taken for public use. Such is the case in Ohio, Maryland, Mississippi, Arkansas, and Kentucky. But it has been held that even this provision does not prevent an entry being made to survey and lay out the road before compensation is made. (*Doughty* v. *The Somerville and Eastern R. R. Co.*, 3 Halst. Chan. 51.) Various decisions are to be found that payment must precede the entry; but it will be found on examination that the charter of the company or the statute requires that previous compensation be made. Although the right of the owner of lands to

compensation therefor, when taken for public use, accrues at the time of the taking, it may be ascertained and determined afterwards. (*Boynton* v. *The Peterboro and Shirley Railway Co.*, 4 Cush. 467.) And if the law which authorizes the taking, makes provision for the payment of compensation, it is not unconstitutional. (14 Wend. 51 ; 34 Maine, 247.)

Counsel for Appellant, in reply. The meaning which the respondent's counsel seem to give the word *property* limits it to title ; for they contend that payment, under the Constitution, "need not precede the entry, although it is a condition precedent to the vesting of the title." In other words, payment need not precede the entry, use, occupation, and enjoyment of property, provided it only precedes the vesting of the title. The defendant might use and possess the property of the plaintiff for fifty years, and the title never vest, and during the time the plaintiff might be as effectually deprived of his property, or all that makes property of any value, as if he held no title. This, however, is not an open question in this State. It has been before this Court at various times and in various shapes, from the earliest history of the State to the present period. (*Gunter* v. *Geary*, 1 Cal. 462 ; *City of San Francisco* v. *Scott*, 4 Cal. 114 ; *McCann* v. *Sierra Co.*, 7 Cal. 121 ; *Sacramento Valley Road* v. *Moffatt*, 7 Cal. 577 ; *Colton* v. *Rossi*, 9 Cal. 595 ; *McCauley* v. *Weller*, 12 Cal. 500 ; *Bensley* v. *Mountain Lake Co.*, 13 Cal. 306 ; *Johnson* v. *Alameda Co.*, 14 Cal. 196 ; *S. F. and San José Railroad Co.* v. *Mahoney*, 29 Cal. 112.)

By the Court, Sanderson, J. :

The complaint alleges that the defendant, by its servants and agents, forcibly and unlawfully entered upon the land of the plaintiff and graded through the same a bed for their railroad, and in so doing removed and destroyed certain fruit trees planted and growing upon the land ; that the defendant threatens to complete the construction of its road by placing

upon the bed so graded the requisite superstructure; and that the defendant is insolvent, concluding with a prayer for damages and an injunction.

The defendant justifies the supposed trespass under the Act entitled "An Act to provide for the incorporation of railroad companies and the management of the affairs thereof, and other matters relating thereto," passed May 20th, 1861, as amended April 27th, 1863, (Statutes 1861, p. 607; 1863, p. 610.) Judgment was for the defendant, and the plaintiff appealed after having first moved for a new trial.

Section twenty-two of the Act in question provides that railroad companies may acquire the title to such land as they may need for the purposes of their road.

Section twenty-three provides that such land may be acquired by condemnation, after a certain mode prescribed in the Act.

Section twenty-four requires that proceedings for that purpose shall be commenced by petition, setting forth certain matters which are specified in that section.

Sections twenty-five to thirty-seven, both inclusive, prescribe how such proceedings shall be conducted. Sections thirty-four, thirty-five, thirty-six and thirty-seven are those with which we have to deal more especially in the present case, and are as follows:

"SEC. 34. If the title attempted to be acquired by virtue of the provisions of this Act shall be found to be defective from any cause, such company may again institute proceedings to acquire the same, as in this Act prescribed, and at any stage of such new proceedings, or of any proceedings under this Act, the Court or Judge in chambers may, by a rule or order in that behalf made, authorize such company, if already in possession, to continue in the use and possession; and if not in possession, to take possession of and use such premises during the pendency and until the final conclusion of such proceedings, and may stay all actions and proceedings against such company on account thereof; provided, such company

shall pay a sufficient sum into Court or give security, to be approved by such Court or Judge, to pay the compensation in that behalf when ascertained.

" SEC. 35. Upon the report of the Commissioners being filed for record, as above provided for, and upon the payment or tender of the compensation and costs, as prescribed in this Act, the real estate, or the right, title or interest therein described in such report, shall be and become the property of said company for the purposes of its incorporation, and shall be deemed to be acquired for and appropriated to public use."

" SEC. 36. Such company shall, within thirty days after the final confirmation of the report as aforesaid, pay or tender the sum of money ascertained and assessed by said Commissioners as and for the compensation of each tract of land described in said report, of which the compensation was ordered by said Court or Judge, to be ascertained and assessed as aforesaid ; and said payment or tender may be made to the person or persons owning said tract of land, or having or holding any right, title or interest therein, according to the amount or extent of the right, title or interest owned or held therein by such person or persons, or said payment may be made to the said Clerk for said persons, and the same shall be deemed and taken as a payment to such person or persons, and shall be as effectual for all purposes whatsoever as if the said sum of money had been personally paid to each and all of the persons entitled thereto.

" SEC. 37. The said Court or Judge shall, at the time of the payment of the said sum of money to the said Clerk, or at such other time or times as may be ordered, direct and order the same to be paid over to the person or persons who shall, upon satisfactory proof, appear to be entitled thereto."

By the foregoing provisions it is clear that the Legislature intended that just compensation should be made for land taken for public use and actually paid before the title vests in the railroad company, but that the railroad company should have the right to enter and proceed with the survey and con-

struction of the road, if so disposed, before the compensation is ascertained or paid, provided the company pays into Court a sum of money sufficient to pay the damages when assessed, or gives security, to be approved by the Court or Judge, for the payment of the same within thirty days after the final confirmation of the report of the Commissioners.

The facts of this case, so far as they are needful to the present purpose, are substantially as follows : The defendant filed a petition for condemnation in due form, gave a bond approved by the Judge, and obtained an order authorizing it to proceed with the construction of its road, and to take or continue in the possession of the land for that purpose pending the proceedings. Commissioners were appointed to view the premises and assess the damages. They did so, and filed their report on the 27th of November, 1865. The plaintiff appeared before the Commissioners in person and by counsel. He testified himself as to the damages, and introduced other persons as witnesses. The report of the Commissioners was finally confirmed on the 16th of February, 1866, after a motion made by the plaintiff to vacate it and grant a new trial had been heard and denied. The supposed trespass was committed before and pending these proceedings. This action was commenced on the day before the report of the Commissioners was filed. At that time no compensation for the land had been paid, and, under the statute, the defendant had until the expiration of thirty days from the 16th of February, 1866, to make payment.

The controlling question, and the only one which we deem it important to notice *in extenso*, relates to the constitutionality of the Railroad Act so far as it authorizes an entry upon the land before the damages have been paid and the title thereby vested in the corporation.

Several cases are cited by counsel for the plaintiff, decided before and since the passage of the Act in which the Constitution, as is claimed, has received a construction, in view of which we are foreclosed upon the question and compelled to declare the provision in hand repugnant to that clause of the

Declaration of Rights which provides that private property shall not be taken for public use without just compensation. (Con., Art. I, Sec. 8.) In view of this claim, it becomes important in the first instance to determine precisely what, if anything, has been decided with reference to the present question.

The first case is that of the *City of San Francisco* v. *Scott*, 4 Cal. 114. It was an action for the obstruction of a street in San Francisco. The Common Council had by ordinance extended the street through the land of one Price. In conformity with the provisions of the city charter the damages had been assessed and awarded to Price. The street had been opened and maintained as such for four or five months after the award, when, the damages remaining unpaid, the defendant, as agent of Price, and by his direction, obstructed the street, and the question was whether, under the circumstances, the title to the land had vested in the city so as to render the defendant liable for obstructing the street. The Court, Mr. Chief Justice Murray, said : " Our Bill of Rights provides that private property shall not be taken for public use without just compensation being made therefor, and it is now the better opinion that such compensation must be made before the citizen can be divested of his rights. It is not sufficient that the law points out the mode by which the damage may be ascertained, and provides the party with a remedy to enforce his rights ; no such obligation can be imposed upon him ; he is entitled to the damages which he has sustained without resorting to a legal tribunal to enforce the payment. The law watches the exercise of this prerogative right of sovereignty with a zealous regard for the rights of the citizen. Admitting all the steps for opening this street were properly and legally taken, (a proposition denied by the appellant's counsel,) it is evident that the premises in question did not become a public street by virtue of such ordinance until the city had paid or tendered the amount of the assessment to the defendant ; in other words, a city ordinance would not divest the title to

private property, and *ex propio vigore* operate a dedication to the public use."

By this language we understand the Court to hold merely that the damages must be paid before the title could vest in the city. Whether the city, if its charter had so provided, *could have* entered upon the land for the purpose of survey or construction before the payment of the damages, upon giving security therefor, was a question not in the case and not considered. What the terms of the ordinance were does not appear, but from what is said it must be presumed that the city had undertaken to establish the street regardless of the question whether compensation had been made or secured in any manner other than by a simple award.

The next case is that of *McCann* v. *Sierra County*, 7 Cal. 121. The action was like the present. The Board of Supervisors of Sierra County had by resolution extended a street or thoroughfare through the land of the plaintiff without having provided any fund for compensation. The Court said : " The Constitution of California provides ' that private property shall not be taken for public use, unless just compensation be made therefor.' A similar provision is to be found in the Constitution of every State in the Union, and the result of the decisions on this subject may be briefly stated thus : That compensation must be made in advance, or a fund must be provided out of which compensation shall be made, so soon as the amount can be determined. The property of the citizen cannot be taken from him without ample means of remuneration are provided. From this it results that the Act of the Supervisors of Sierra County, in appropriating the property of the plaintiff to public uses, before making provision for paying him the value thereof, was illegal, and that he might resort to a Court of equity to restrain them from interfering with the freehold."

This language when limited to the conditions before the Court, as it must be, amounts to precisely what was said in the *City of San Francisco* v. *Scott.* It is but a loose repetition of the language of the Constitution and throws no more light upon the question before us than is emitted by the Constitu-

tion itself. This is also true of the next case of *Colton* v. *Rossi*, 9 Cal. 595, which merely repeats the previous cases, and reasserts the broad proposition that private property cannot be taken without compensation is first made or a fund provided; but as to the question whether, under any mode which the Legislature may adopt for working the power of eminent domain, the compensation therein provided for must precede the occupation of the land or be cotemporaneous with it, or may follow it within a reasonable time, which is the question here, not a word is said.

The next case is that of *McCauley* v. *Weller*, 12 Cal. 500. It was an action for forcible entry and unlawful detainer. Weller, then Governor of the State, took possession of the State Prison, under an Act of the Legislature, which empowered and directed him to do so in the name of the State, but made no provision for compensating McCauley for his interest in the property, which was a leasehold estate. The Court held that the Act was unconstitutional because it made no provision for compensation neither before nor after seizure, citing the cases already noticed. Upon the question before us it did not and could not have expressed an opinion for the obvious reason that it was not involved in the case.

The next case is that of *Bensley* v. *The Mountain Lake Water Company*, 13 Cal. 306. It was an action very much like the present, but it turned upon no such question as that with which we are dealing. It turned wholly upon the question whether the defendant had abandoned whatever rights it had acquired in the land by withdrawing the money which had been deposited in Court as security for the payment of the damages, and delaying any action under the proceedings to condemn for a period of four years, and until the land had increased very much in value, when it undertook to assert its alleged right. It is true that the provision of the statute under which the proceedings were had were substantially the same as here, (Statutes 1851, p. 438, Sec. 17,) but no point was made as to their constitutionality. The language of Mr. Justice Baldwin, in discussing the question of abandonment,

may be broad enough, perhaps, to cover the constitutional question; but his attention was not called to it, and he makes no reference whatever to the terms of the statute, showing that the question was·quite as absent from his mind as it was from the case with which he was dealing. That he did not consider that he had decided it is made obvious by a reference to the subsequent case of *Gilmer* v. *Lime Point*, which will be noticed hereafter.

The next case is that of *Johnson* v. *Alameda County*, 14 Cal. 106. It was an action against the county for the value of certain land over which a road had been opened by the Board· of Supervisors. It proceeded upon the theory that the road had been lawfully opened and that the title to the land had vested in the public; but the Court held that it had not, for the reason that the county had not paid for it, and that the land was therefore still the land of the plaintiff.

That no greater latitude should be given to the foregoing. cases than that which we have indicated is suggested, if not demonstrated, by the case of *Gilmer* v. *Lime Point*, 18 Cal. 230. The Act under which the condemnation of Lime Point was sought in that case provided that the money should be paid into the County Treasury for the benefit of the owners, and that the Treasurer should be required to give a special bond for its safe keeping, and that when this was done a deed should be made, and thereby the title should become vested in the United States. A point was made as to the constitutionality of the Act in this respect, and the Court held that it was free from objection on that score, citing New York cases in which it was held that compensation need not be paid before entry. (Ib. 260.)

The last case relied upon is that of the *San Francisco and San José Railroad Company* v. *Mahoney*, 29 Cal. 112. The ground upon which it is claimed that it is conclusive of the present question is of the same character as that relied upon in connection with the other cases already noticed. It is sufficient to say that the point here made was not made in that case, and was not considered.

Thus it seems clear, we think, that the power to enter upon and occupy land held in private ownership for public uses, upon the conditions prescribed in the statute before us, and before compensation for the land has been actually paid, has never been denied to the State.    It is true that in some of the cases language has been employed which by construction may be made broad enough to cover the question, but as we have seen the question has never been directly made, nor has its decision been at all necessary to the final determination of those cases.    It sometimes happens that in the discussion of questions which are involved in a case before the Court, reference is made by way of inducement to cognate subjects, but it is well understood that the case is authority only upon the points directly involved and necessarily decided.

The right of eminent domain necessarily exists under every form of government.    It is the right to take private property, either real or personal, and appropriate it to public use whenever the exigencies of the public cannot be adequately met and provided for in any other way.    Like the cognate power of taxation, it is indispensable and the Government takes it by the law of its creation.    But its exercise, except upon terms of equitable compensation, would be onerous and oppressive, and in view of the objects for which Governments are organized, to secure life, liberty and property—it ought not to be exercised except upon those terms, for it is a power to destroy what the Government is also bound to protect.    Hence in the Federal Constitution and in every State Constitution, with four exceptions—North and South Carolina, New Hampshire and Arkansas—the Government is required to make just compensation for private property taken for its use.    Owing to the absence of any restriction upon the exercise of the power it has been held in South Carolina that private property may be taken for public use without compensation.    (*State* v. *Dawson*, 3 Hill, S. C. R. 100.)    The Courts of North Carolina have never gone so far, but they have held that private property may be appropriated before compensation is made, or that compensation is not a condition precedent to the exercise

of the power.  (*B. and G. Railway Co.* v. *Davis*, 2 Deo. &
Bat. 451.)    Independent of constitutional restrictions there
seems to be no good reason for doubting the power of the
Government to take the property first and make compensation
afterwards, if not to take it without any compensation what-
ever.    Such a course might in many cases admitting of no
delay, be needful to a prompt and complete response to the
necessities of the Government.    It may be that the public
service might suffer serious detriment by a delay sufficient to
ascertain in a practicable and satisfactory mode the value of
the property taken and to provide compensation, while the
citizen could not suffer materially by a reasonable delay for
that purpose.    So the citizen is assured of compensation with-
out such delay as to seriously impair the compensation when
received, there would seem to be no just ground for complaint,
and the obligation resting upon the Government must, for all
the purposes of the question, be accepted as sufficient assur-
ance that compensation will be made.

In view of the proceedings usually resorted to for the pur-
pose of ascertaining the amount of compensation, important
enterprises demanded by the public necessities may be delayed
and crippled without any very substantial reason, if compensa-
tion must be made before any use of the property can be had.
In time of war, and perhaps under other public exigencies
admitting of no delay, an immediate seizure may be impera-
tively demanded by the necessities of the public, and if so a
rule which exacts compensation before seizure would be a
practical denial of the power in cases where its exercise is
most needed.    We must presume that these considerations
were present to the minds of the framers of American Con-
stitutions when dealing with the power of eminent domain.
Regarding it on the one hand as a sovereign and imperial
power of onerous and oppressive tendencies, and on the other
hand as an indispensable power, the reasonable exercise of
which upon terms of equitable compensation must become
needful to the public good—at all times paramount to that of
individuals—they must be presumed to have sought a rule for

its exercise which, while sufficiently guarding against abuse, would not fail to afford a speedy and adequate response in all emergencies, to the necessities of the public.

The language of our Constitution is general and makes no distinction between cases. It must therefore be read as exacting compensation in advance in all cases, no matter how great the emergency, or in none. If the former reading is to be adopted the Government cannot even in time of war touch the property of the citizen without first paying for it; and in time of peace neither the Government nor corporations acting as its agents can enter upon the construction of public improvements, however urgently they may be demanded by the necessities of the public, until after long delays which may result in serious detriment to the business and general prosperity of the country, notwithstanding the fact, which is patent to every one, that the rights of the citizen may be otherwise amply secured. If such is the true reading, it must be admitted that the framers of the Constitution have succeeded effectually in guarding the rights of the citizen; but it must be further admitted that in doing so they have gone much further than was necessary to accomplish all that was requisite in that direction, and have adopted a rule which in many cases may operate to the detriment of the public good without any substantial advantage to the citizen—a result not intended, if they were influenced by the considerations above suggested and which would naturally occur to their minds.

The practice of taking private property for public use, before payment therefor was actually made, prevailed, it is believed, before the Revolution of 1776. It certainly has since in many of the States of the Union, as will appear hereafter, under constitutional provisions the same as ours, and without just complaint, so far as is known. Had it been the intention to establish a different rule in this State, it is but reasonable to suppose that the framers of our Constitution would have followed the example of Kentucky, Ohio and other States, by expressing the intent clearly, and would not

have adhered to language which had been repeatedly construed as giving sanction to the practice.

In a large majority of the American Constitutions the restriction upon the exercise of this power is couched in the brief and general language employed in our own—" Nor shall private property be taken for public use without just compensation," which does not, at least in terms, require compensation to be made in advance. But in some the restriction is defined with more particularity. The language of the Constitution of Kentucky is: " Nor shall any man's property be taken or *applied* to public use, without the consent of his representatives and without just compensation being *previously* made to him." The Constitutions of other States also require compensation to be made in advance. The Constitution of Ohio discriminates between cases, and provides that compensation shall be made in advance only in certain cases, leaving the Government to provide for the payment of compensation in other cases after the seizure. Its language is as follows: " Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency imperatively requiring its immediate seizure, or for the purpose of making or repairing roads which shall be open to the public without charge, a compensation shall be made to the owner in money ; and in all other cases where private property shall be taken for public use, a compensation therefor shall be *first* made in money, or first secured by a deposit of money ; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner." Here the whole subject seems to be provided for, leaving but very little to the discretion of the Legislature.

The language of the Constitution of Indiana also discriminates between cases: " No man's property shall be taken by law without just compensation, nor, except in case of the State, without such compensation *first* assessed and tendered."

Contrasting the language of our Constitution with that of the Constitutions of Kentucky, Ohio and Indiana, there would

seem to be little room for doubting that the time at which compensation is to be made, whether before or after the seizure, is left to the discretion of the Legislature. It is clear that to the minds of the framers of those Constitutions such a result would have followed from the use of the general language found in our Constitution, for while they used it they proceeded to qualify its general terms.

The charter of the Buckfield Branch Railroad, a corporation in the State of Maine, contained a clause to the effect that damages for taking private property for its use should be ascertained and paid as provided in the statute in relation to highways. Under that statute the corporation was authorized to enter upon and take possession of such land as it required, upon giving security, if required, for the payment of such damages as might thereafter be awarded by a jury impanelled for that purpose. The constitutionality of this provision of the statute arose in the case of *Cushman* v. *Smith*, 34 Maine, 247, and the conclusion was reached that it was not repugnant to the Constitution, which, in the respect under consideration, is the same as ours. The conclusions reached by the Court are thus summed up by Mr. Chief Justice Shepley, by whom the opinion of the Court was delivered :

" 1. The clause in Constitutions, which prohibits the taking of private property for public use, was not designed to operate, and it does not operate, to prohibit the legislative department from authorizing an exclusive occupation of private property temporarily, as an incipient proceeding to the acquisition of a title to it or to an easement in it.

" 2. It was designed to operate, and it does operate, to prevent the acquisition of any title to land or to an easement in it, or to a permanent appropriation of it, from an owner for public use, without the actual payment or tender of a just compensation for it.

" 3. That the right of such temporary occupation as an incipient proceeding, will become extinct by an unreasonable

delay to perfect proceedings, including the actual payment or tender of compensation to acquire a title to the land or of an easement to it.

" 4. That an action of trespass *quare clausum* may be maintained to recover damages for the continuance of such occupation, unless compensation, or a tender of it, be made within a reasonable time after the commencement of it.

" 5. That under such circumstances an action of trespass, or an action on the case, may be maintained to recover damages for all the injuries occasioned by the prior occupation."

A like construction has been placed upon this provision of the Constitution in New York, Pennsylvania, Indiana and Michigan; and doubtless in other States also. (*Bloodgood* v. *Mohawk and Hudson River Railroad Company*, 14 Wend. 56 ; *Smith* v. *Helmer*, 7 Barb. 416 ; *Mayor and Aldermen of Pittsburg* v. *Scott*, 1 Penn. St. R. 309 ; *Hawkins* v. *Lawrence*, 8 Blackf. 266 ; *Rubalton* v. *McClure*, 4 Blackf. 505 ; *Green* v. *Michigan Southern Railroad Company*, 3 Mich. 496.)

If, as claimed by the appellant, the Constitution is to be read as requiring compensation to be made in advance of the taking, a further question then arises as to what is the taking in the sense of the Constitution and the statute. When can it be said that the act of taking has transpired ? Has it transpired when an entry for the purpose of survey and selection has been made; or when an occupation for the purpose of construction has been taken; or has it transpired only when the last act has been performed, which, under the mode of condemnation adopted, is required to transfer the title or subject it to the servitude ? Upon this question at least the Constitution is silent, except so far as its will is indicated by the naked import of the word " taken." The provision requiring compensation presupposes that certain proceedings will have to be taken for the purpose of enabling the Government, or its agent, the corporation, on the one hand, to determine whether the property will be required, and on the other, to enable the Government, or the corporation and the individual,

to ascertain what the compensation ought to be if the Government or the corporation finally concludes to take the land. The right to take for public use implies the right to enter for the purpose of ascertaining whether the public need will be subserved by the taking. If a railroad is to be constructed, a survey must be made before the corporation can determine the precise land which will be required; and the corporation may lawfully enter for that purpose and may lawfully do what would otherwise be a trespass. Under no circumstances, then, can the entry be regarded as the taking. Nor, indeed, can it be said in any legal sense that the land has been taken until the act has transpired which divests the title or subjects the land to the servitude. So long as the title remains in the individual, or the land remains uncharged by the servitude, there can have been no taking under conditions which, as already stated, preclude the commission of a trespass. The Government and the individual really stand in the attitude of contracting parties, with this difference only, that the former has the power to compel the contract if willing to pay what may be ascertained to be a fair price. Until the price has been ascertained the Government is not in a position to close the bargain, and when it is ascertained, if the sum is not satisfactory the Government may withdraw. The Government is under no obligation to take the land if the terms when ascertained are not satisfactory. If this view of the rights of the Government is correct, and no reason occurs to us why it is not, it follows that the Legislature may prescribe the proceedings by which the taking shall be effected, and the time at which, in view of the mode adopted, the taking shall be deemed complete; and if so the statute in hand does no violence to the Constitution if read as exacting compensation in advance of the taking, for it does not propose to transfer the title or subject the land to the servitude *in limine;* on the contrary, it expressly provides that the title shall not pass until the compensation has been paid. Hence, in the sense of the statute, the taking consists of a series of acts commencing with the entry for the purpose of location and terminating in

the act of payment, and the sense of the statute is not necessarily repugnant to the sense of the Constitution. Under this view the only objection which can be urged against the statute is that it may by possibility be made to justify a trespass in the event the corporation should finally conclude not to take the land. But the answer to this is that the possibility does not exist, for the moment the time has passed for making the compensation, or the moment the corporation elects not to take the land, the shield interposed between it and the individual pending the proceedings on the score of trespass, is withdrawn, and the latter has his remedy by action against the former for the recovery of his land and any damages he may have sustained by reason of the trespass. It will not do to say in reply to this that the remedy may be worthless by reason of the insolvency of the corporation. That happens every day, and in every conceivable case, and it is beyond the power of Constitutions or statutes to prevent it. Moreover, such consequences have never been considered proper tests by which to solve constitutional questions.

So, whether we read the Constitution as exacting compensation before the taking, or as permitting the taking before compensation is made, the result would seem to be the same so far as the validity of the present statute is concerned. But we are of the opinion that the latter is the proper reading. It certainly is sustained by very high authority, as we have seen. At least, in view of the fact that the Constitution does not, either in direct terms or by unavoidable inference, require compensation in advance, and in view of the further fact that if it did so the power of eminent domain might be, as we have seen, practically denied to the Government in the hour of its greatest need, as in the case of war or other great and sudden emergencies admitting of no delays for which the framers of the Ohio Constitution were so careful to provide; and in view of the further fact that in the present day and generation the exercise of the power of eminent domain may be instrusted to the Legislature without reasonable apprehension of abuse; and in view of the further fact that the lan-

guage in question had received, before it was incorporated
into our Constitution, a judicial construction in conformity
with the latter reading, of which those by whom it was bor-
rowed cannot be presumed to have been ignorant; and lastly,
in view of the number of eminent jurists by whom the latter
reading has been adopted, we are not prepared to say that the
former reading is the true one beyond a reasonable doubt.   In
such a case our duty is plain.   The statute must be declared
free from constitutional objection, even though it be read as
taking the land first and making compensation afterward.

Judgment affirmed.


Sawyer, J., concurring:

After a careful examination of the judicial decisions in those
States, the Constitutions of which contain the provision, " Nor
shall private property be taken for public use without just
compensation," in language substantially identical with that
of our own, I am satisfied that, under the construction estab-
lished, it is not necessary that the compensation should be
*actually ascertained and paid* previous to an entry for the pur-
pose of appropriating the property—previous to the actual
preliminary taking.   I am further satisfied, upon a critical
examination of the cases, that there is far less conflict upon
the point than I had been led to suppose from a cursory
reading of the decisions.   This provision in the Constitution
of New York, which is substantially like ours, was discussed
in several early cases, and was construed in *Bloodgood* v. *M.
and H. R. R.*, 14 Wend. 51.   In that case it was expressly
held, that this provision of the Constitution did not require the
compensation to be actually paid, before entering upon and
taking possession of the property.   This case was reversed by
the Court for the correction of errors, on a question of plead-
ing, depending upon a construction of the provision in ques-
tion, and the arguments of the Chancellor and those Senators
who delivered opinions, are very cogent to the effect, that the
Constitution requires the compensation to be ascertained and

paid before the taking, and, without a critical examination, are apt to mislead as to the real point decided. But they all concede that the constitutional requirement was satisfied by a provision for payment, and of a fund out of which satisfaction could with certainty be had; and further, that when the State, or a subordinate division of the State, was to make the compensation, and the law provided the means by taxation for raising the fund, this was a sufficient provision—or, in the language of the Chancellor, "that it was sufficient if a certain and adequate remedy was provided by which the individual could obtain such compensation without unreasonable delay." (18 Wend. 17.) "The public purse, or the property of the town or county upon which the assessment is to be made, may justly be considered an adequate fund." (Ib. 18, 28, 35, 36, 39, 77.) Thus it is held, that, when a State, or a city, or a town, is to make the compensation, and the fund is authorized by law to be raised in such a manner as to be enforced through the Courts, the public faith is pledged, the fund is certain, and this is sufficient and satisfies the constitutional provision without actual payment or tender. In case of a private corporation, it is argued that there must be a payment, or tender, or a fund, placed within the reach of the owner of the land; but, in such case, they do not very distinctly inform us what is absolutely essential to constitute a sufficient fund. It is manifest, however, that for the purpose of constitutional construction the concession in favor of the State, city, or town, covers the whole ground. A provision for subsequent payment by the State or a town, is certainly not an actual payment or tender. And both towns and States, notwithstanding the presumption in their favor, like corporations, are notoriously often slow paymasters, even when the laws are supposed to have made ample provisions for payment.

One of the points really decided in the case, is, that the actual payment or tender is not required prior to the taking, but that a fund, or means must be provided, by which compensation shall be assured with reasonable certainty, and without unreasonable delay. And this is by far the strongest case

against the right to enter before actual payment, that has come under my notice under constitutional provisions substantially like our own.   I have found nothing in the later decisions of the State of New York opposed to this view.   On the contrary, it seems to be recognized in several subsequent cases. (*Baker* v. *Johnson*, 2 Hill, 347 ; *People* v. *Hcyden*, 6 Hill, 361 ; *Rexford* v. *Knight*, 1 Ker. 319.)

The question is examined in a very exhaustive and able opinion in *Cushman* v. *Smith*, 34 Maine, 248, cited by my associate, and the Court gives the provision in question a less restricted construction than is adopted . in the arguments by the Chancellor and Senators, who expressed opinions, in the Court for the correction of errors in the case cited from 18 Wendell.   *Cushman* v. *Smith* was affirmed after a change in the bench, in *Nichols* v. *Sorn and K. R. R. Co.*, 43 Maine, 358 ; and *Davis* v. *Russell*, 47 Maine, 445.   In Indiana the construction has been fully as liberal as in *Cushman* v. *Smith*. (*Rubalton* v. *McClure*, 4 Blackf. 507 ; *Hawkins* v. *Lawrence*, 8 Black. 268 ; *McCormick* v. *Pres. and Trus. Town of Lafayette*, 1 Cart. 52.)   A similar construction was given to a similar provision in the Constitution of Ohio of 1802.   (*Bates* v. *Cooper*, 5 Ohio, 118 ; *Kramer* v. *Clev. & Pitts. R. R. Co.*, 5 O. St. R. 144.)   The Constitution of Ohio has since been amended.   In Michigan a similar construction has been adopted. (*Green* v. *M. S. R. R. Co.*, 3 Mich. 501.)   In Wisconsin the same construction, with the limitations indicated in the opinions in *Bloodgood* v. *M. & H. R. R. Co.*, 18 Wend., is intimated, though not directly decided, in *Norton* v. *Peck*, 3 Wis. 724 ; *Shepardson* v. *M. & B. R. R. Co.*, 6 Ib. 613 ; and *Powers* v. *Bears*, 12 Ib. 220.   In Mississippi the provision is " compensation first made therefor," and the Courts rest their construction on the word " first."   (*Thompson* v. *Grand Gulf R. & B. Co.*, 36 Miss. 314.)   So, also, the Constitution of Maryland requires the compensation to be " first paid or tendered." (*Stuart* v. *Mayor and City Coun. of Balt.*, 7 Md. 500.)   The provision in the old Constitution of Iowa was similar to ours, but it seems to have been thought necessary to amend it, and

now the provision reads, "without compensation first being made or secured." (*Henry* v. *D. & P. R. R. Co.*, 10 Iowa, 543.) Other Constitutions contain similar and further restrictions. The result of the decisions under all the Constitutions containing provisions substantially identical with ours, is, that laws authorizing an entry upon, and temporary appropriation of, lands for public use, without a previous actual payment, or tender of compensation, as a preliminary step towards a permanent appropriation, to be followed up and consummated with reasonable diligence by an ascertainment and payment of the just compensation, and a final condemnation of the land, are not necessarily unconstitutional. To this extent, at least, I find no conflict in the authorities. The decisions also appear to be uniform, that if the Government, or a county, city or town, is to make the compensation, and the law provides a fund, or provides for raising a fund by taxation out of which the compensation is to be made, in such manner that the Courts can enforce the law by compelling the officers to act in case they are delinquent, the constitutional requirement is satisfied; for, say the Courts, in substance, it must be presumed that the Government will discharge its duties, and the taxable property of the State, county, city or town, must be regarded as amply sufficient, and the compensation certain to be made. The opinions in 18 Wendell, however, in argument, maintain that the responsibility of a corporation is not a sufficient guarantee. But there is no case, so far as I am aware, which goes to the extent of holding that no provision short of payment, or tender by a corporation, can be made which will render the provision for compensation sufficiently certain; and when it is once established that a law under any circumstances may be passed authorizing a preliminary entry and appropriation before actual payment or tender, the rest relates only to the question of whether the provision for compensation or security that it will be paid, is sufficiently certain. While we are theoretically not to doubt the ability or good faith of the Government, or of subordinate communities, such as counties, cities and towns, to make compensation, yet

we cannot be blind to the fact that, practically, it is possible to provide other securities equally safe, less expensive and more prompt and efficient in matters involving the comparatively small amounts usually arising out of the appropriation of lands for railroad purposes; and the "just compensation" contemplated by the Constitution is actual, practical, and not theoretical compensation.

The statute, under which the proceedings in question in this suit were had, makes minute provision for proceedings to condemn lands, by which the parties are to have notice and an opportunity to be heard. Section thirty-four provides that "at any stage   *   *   * of any proceedings under this Act, the Court or Judge in chambers may, by rule or order in that behalf made, authorize such company, if already in possession, to continue in the use and possession; and if not in possession, to take possession of and use such premises during the pendency and until the final conclusion of such proceedings, and may stay all actions and proceedings against such company on account thereof; provided, such company shall pay a sufficient sum into Court, or give security, to be approved by such Court or Judge, to pay the compensation in that behalf when ascertained." I do not think, in view of the decisions on the subject, we can say, as a matter of law, that this is not a sufficient provision for compensation to justify the preliminary entry and occupation, in connection with the further provision that the payment shall be actually made within thirty days after the amount is ascertained, and that, till payment, the land shall not be deemed to be finally taken. It cannot be doubted that payment of a sufficient amount into Court would be a sufficient provision of a fund. The only doubt that can be suggested on this point, is, as to the alternative provision for security to be approved by the Judge. The nature of the security is not prescribed. It must be approved. The parties would doubtless be heard, and the Judge, it must be presumed, would faithfully discharge his duty. It is true that personal security might be taken, apparently ample, which

71

might subsequently turn out to be bad, or require a lawsuit to enforce. This might also be true with reference to moneys actually deposited in Court. The depositary might be unfaithful, and his bondsmen prove worthless. And a similar result might arise where a town, or city is to provide and pay over the fund. But in practice, with the responsibility of a corporation able to construct a railroad, and further security, to be approved by a District Judge after the parties have been heard, and the requirement that the money shall be paid within thirty days after the amount of the compensation is ascertained, and the liability to forfeit the right by non-payment, it could scarcely happen that the compensation would not be sufficiently certain to answer the exigencies of the Constitution under the construction established by the general current of the authorities. Other States have similar laws, as Ohio (*Kramer* v. *C. & Pitts. R. R. Co.*, 5 O. St. R. 141,) and Maine (*Cushman* v. *Smith*—before cited—34 Me. 248.) The statute under which the latter case arose required security to be given " to the satisfaction of the Commissioners." But the compensation awarded was neither paid, tendered, or secured as required.

The security required by the statute was given in this case, and I cannot say, as a matter of law, that compensation was not provided for within the rule established by the decisions, so far as to justify the temporary occupation pending the proceeding to ascertain the amount of compensation, and preliminary to a permanent appropriation.

I confess that I find the settled construction of the clause in question not in harmony with my preconceived ideas upon the subject; but it has received the approbation of many distinguished jurists, and, upon the main and vital point a critical examination really discloses no conflict in the decisions. A few Judges, out of the great number who have had occasion to pass upon the question, have thought the construction a little strained, but have acquiesced in the rule established by their predecessors. The peculiar phraseology of the provision leaves it open to the construction given, and, if as an original

question, it were more doubtful than it is, I should feel called upon, in view of the authorities and the rule which requires doubts to be resolved in favor of the validity of the action of the Legislature, to hold the law constitutional.

I agree with my associate that, although there are dicta in the decisions of our own State not in accordance with the conclusions now attained, the question has never before been decided.

But. it is not my purpose to again traverse the entire ground so thoroughly and ably covered by my associate, and I leave the matter here. I think the judgment should be affirmed.

RHODES, J., dissenting :

I dissent.