Andrews, J.
 

 The order of the special term, from the affirmance of which this appeal is taken, was applied for and granted under the law regulating “ proceedings for the condemnation of real property,” being chapter 95 of the Laws of 1890, which in form is an act to amend the Code of Civil Procedure by adding certain sections. thereto. The particular section under which the application and order was made is § 3379, and is as follows: “ At any stage of the proceeding (for condemnation) the court may authorize the plaintiff, if in possession of the property sought to be condemned, .to continue in possession, and may stay all actions and proceedings on account thereof, upon giving security or depositing such sum of money as the court may direct, to be held as security for the payment of the compensation which may be finally awarded to the owner thereof, and the costs of the proceeding, and in every such case the owner may conduct the proceeding to a conclusion if the plaintiff delays or neglects to prosecute the same.”
 

 
 *209
 
 The circumstances under which the railroad company entered, into possession, as disclosed in the affidavits presented to the .special term, leave no room to doubt that the entry was tortious, under no claim or pretense of right and before any proceedings were instituted to acquire the title by condemnation, and in defiance of the will of the true owner. The time when the entry was made does not distinctly appear. The engineer and surveyor of the company went upon the lands to survey the route in June, 1891. It is alleged in one of the affidavits in the moving papers that the company had been in possession for a “ long time,” but for how long a time or when the possession was taken is not stated. The map locating the route was filed November 21, 1891, and it cannot be presumed that its possession antedated that time. The company having taken possession by a pure trespass, proceeded to construct its road-bed across the lands in question, cutting down and clearing away the trees and timber thereon, and was so engaged when it for the first time sought the intervention of the court.
 

 The only justification for this violation of the right of property suggested in the moving papers is that lands were unoccupied, unimproved forest lands in the Adirondack wilderness, and that on searching the record title the attorneys for the company had been unable to ascertain in whom the title was vested, and further that the public interests required a prompt and vigorous prosecution of the enterprise and would suffer detriment from delay.
 

 But it appeared from the uncontradicted affidavit on the part of the defendant, that she has continuously conducted the business ■of lumbering on this territory since 1886, running in connection therewith a steamboat on the Moose river flowing through the same, and that on October 22,1891, the defendant’s agent warned the engineer of the company not to trespass on the lands. The agent, again, December 15, 1891, saw the engineer, who informed him that the company had commenced building the road and that “ it would do no good to forbid. Mrs. De Camp had been forbidding all summer.”
 

 It must be regarded as an established fact that the possession which the company asserted in the moving papers originated in a trespass, known to the company to have been such, and was taken under no mistake or misapprehension, and without color of authority. We entertain no doubt that under these circumstances the company was not, when the motion was-made, “in possession ■of the property sought to be condemned,” within the true meaning of § 3379, above quoted, and that the case presented did not authorize the order granted. The provisions of the act, chapter 95 of the Laws of 1890, are substituted for the prior acts regulating the condemnation of real property, which are thereby repealed, except in certain cases not here material to be stated. Section 3383.
 

 The general railroad act of 1850 contained provisions regulating the procedure for the condemnation of lands by railroad companies. Under that act a company was not permitted to take pos
 
 *210
 
 session of lands of which condemnation was sought until the proceedings had terminated and payment or deposit of the compensation awarded had been made. Section 18. By § 21 provision was made for cases of defective title. It provided that where an. attempt had been made to acquire title
 
 in invitum,
 
 or otherwise,, and the title attempted to be acquired was defective, the company might proceed anew to acquire or perfect such title, “ and at any stage of such new proceedings the court may authorize the corporation, if in possession, to continue in possession, and if not in possession, to take possession and use such real estate during the pendency and until the final conclusion of such new proceedings, and may stay all actions or proceedings against the company on account thereof,” on making a deposit or giving security, as the court may direct, and authorizes the party interested in the leal estate to conduct the proceedings to a conclusion if the company delay or omit to prosecute the same.
 

 It is evident that § 3379 of the act of 1890 was framed from § 21 of the general railroad act. Section 21 did not undertake to authorize the court to protect a purely tortious possession by the company, but a possession taken under a claim or color of right, where the title attempted to be acquired, and under which the company entered, was found to be defective. Section 3379» has, it is true, a broader scope. It is not limited to cases of defective title. Its language covers any case where the company may be in possession when the condemnation proceedings are instituted, whether it has before attempted to acquire title or not.
 

 But it would be unreasonable to suppose that the legislature intended to legalize a pure and intentional trespass, or to protect a company in a possession so acquired. Such a construction would offer a premium for disorder and for acquiring possession of the property of another by stealth, force or fraud, and would attribute to the legislature an intention to legalize the commission of wrong and deprive the party injured of the right to resort to the courts for redress. It is not difficult to imagine cases where a company may be in possession under a color of claim, or have acquired possession in good faith, although technically a trespasser without title. To such cases only, we are persuaded, was the statute intended to apply.
 

 The plea of public necessity set out in the moving papers, even1 if well founded, is entitled to no weight in support of the construction of § 3379 claimed by the company. This has ever been the ready and common argument to justify usurpation of authority inconsistent with private rights. But ample provision is made in § 3380 for cases where public interests will be prejudiced by delay pending the proceedings for condemnation. That section authorizes the court, where an answer to the petition has been interposed, to permit the applicant to enter immediately on the land sought to be condemned, and devote it temporarily to the public use on condition of depositing with the court the sum stated in the answer as the value of the property, to be applied as far as may be necessary for that purpose to the' payment of any award which may be made and the costs and ex
 
 *211
 
 penses of the proceeding, or in case the proceeding should be dismissed or be abandoned, to the payment of any. damages sustained by the land owner by such entry, and his costs and expenses. This remedy was and is still open to the petitioner.
 

 This section confirms the construction we have given to § 3379. The legislature evidently did not contemplate that a fraudulent or forcible entry might be made, and that a possession so acquired should stand in place of the lawful entry provided for in § 3380.
 

 We have not deemed it necessary to decide the question of the constitutional power of the legislature to authorize a railroad company having no title and whose entry and possession is that of a trespasser, to continue in possession of lands pending condemnation proceedings, upon mating the deposit or giving the security provided by § 3379, and meanwhile debarring the true owner of his legal remedies. The occupation permitted by that section carries with it to the company the power to dig up the soil, construct its road-bed and commit acts in the nature of waste, and meanwhile the owner is deprived of the use of his land. If this constitutes a taking of the land within the constitutional guaranty, the legislature could not authorize such taking except on the condition of providing certain and adequate compensation to the owner.
 

 Section 3379 provides for compensation in one event only, that is in case the proceeding for condemnation is terminated in favor of the company. It makes no provision for compensation in case of a successful resistance of the proceeding by the land owner. In that case his only remedy for any injury to his land, or any waste committed during its occupation by the company, would be by action. This, within the authorities in this state, is not compensation or a certain and adequate provision for compensation required by the spirit of the constitutional guaranty.
 
 Bloodgood
 
 v.
 
 The Mohawk & Hudson R. R. Co.,
 
 18 Wend., 9. The provision made by § 3380 fully satisfies the constitutional obligation, but § 3379 only provides for one of the alternatives which may happen. See
 
 Davis
 
 v.
 
 R. R. Co.,
 
 47 Cal., 517.
 

 We leave this question open, since the order must be reversed on the ground that the company was not in possession within the meaning of § 3379.
 

 The point is taken that the petition for condemnation was not properly verified, which if well founded would alone require a reversal of the order, as an order under § 3379 can only be made in the condemnation proceeding. The petition is to be verified in the .same form and by the same persons as pleadings in courts of record (§ 3366), and where the party is a domestic corporation, the verification of a pleading in its behalf must be made by “ an officer thereof.” Codé, § 525.
 

 The petition in question was verified by the attorney for the petitionér, who stated in the verification that he “ is its duly authorized attorney and agent, appointed by the plaintiff to verify petitions and pleadings in behalf of the plaintiff for the institution of condemnation proceedings and otherwise; and is the agent
 
 *212
 
 of the plaintiff for the purpose of acquiring the real estate described in the foregoing petition,” and in the petition on the motion for the order now under review, which is made a part of the petition for condemnation, which is verified by the same person, it is stated “ that he is one of the agents for the plaintiff, duly authorized and appointed to purchase lands for its said railroad and secure its right of way."
 

 We think the affiant was an officer of the corporation within the meaning of the Code. He was. not a general officer; but this is not required. He was invested with special and peculiar duties-relating to the acquisition of lands, and in the conduct of proceedings for condemnation. His relation to the company was that of a general agent in respect to those matters, acting under an appointment from the corporation. He was not simply an attorney acting under an ordinary retainer, but was engaged in a special department of the corporate business, having the general management thereof. The objection is not we think well taken. But for the reasons before stated the order should be reversed. '
 

 It appearing, however, that condemnation proceedings are now pending and that the road of the petitioner is substantially completed, the matter should be remitted to the supreme court to enable the company to make such further application as it may be advised.
 

 Order reversed and case remitted, with costs.
 

 All concur, except Earl, Oh. J., taking no part, and Maynard,, J., not voting.