[No. 1,828.]

## ISAAC E. DAVIS AND HENRY COWELL v. SAN LORENZO RAILROAD COMPANY.

CONDEMNATION OF LAND FOR RAILROAD PURPOSES.—The "compensation" to be paid to the owner for damages, spoken of in section thirty-four of the Railroad Act of 1861, as amended in 1863, is that which shall be awarded to the owner of the land on proceedings for condemnation, if the land is finally taken for public use.

IDEM.—If the railroad company is placed in possession during the pendency of the proceedings, no provision is made in said Act, for securing to the owner compensation for the use of the land, and for waste committed on it, while the corporation was in possession; provided, the proceedings shall ultimately fail.

TAKING PRIVATE PROPERTY FOR PUBLIC USE.—If the Court or Judge makes an order, permitting a railroad company to occupy and use land, pend-

ing the proceedings for condemnation, and under said order, the corporation enters into possession of the same, it is a taking of private property for public use, within the meaning of the Constitution.

CONDEMNATION OF LAND FOR RAILROAD PURPOSES.—That portion of the Railroad Act of 1861, as amended in 1863, which permits the Court or Judge on proceedings for the condemnation of land, to make an order allowing the company to enter into possession and use the land sought to be condemned during the pendency of the proceedings, without providing compensation for the use and waste committed if the proceedings finally fail, is in violation of that clause in the Constitution, which prohibits private property from being taken for public use without compensation.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

Action to enjoin the defendant from committing waste on a tract of land belonging to the plaintiffs, in the county of Santa Cruz. The plaintiffs alleged in the complaint that their said tract of land had trees growing thereon valuable for timber, and that the defendant, by a large number of its agents and servants, had forcibly entered thereon, and was cutting down and converting to its own use and destroying trees valuable for timber, and was cutting, tearing up and excavating the soil, and threatened to continue such acts. There was a prayer for a preliminary injunction, and that on the trial the injunction be made perpetual. The Judge granted an injunction on the complaint on the twenty-seventh of July, 1868. The defendant moved to dissolve the injunction on an affidavit showing that the defendant, before it entered upon the land, had filed a petition in the County Court to condemn the same for a railroad track, and had procured an order under the thirty-fourth section of the Railroad Act of 1861 as amended in 1863, permitting it to occupy and use the land sought to be condemned during the pendency of the proceedings for condemnation, and that the work it was doing on the land was only the excavation of its railroad track. On the eleventh day of August, 1868, the Judge made an order dissolving the injunction. From this order the plaintiffs appealed.

*Wilson & Crittenden,* for the Appellants, argued that the act of the defendant in occupying the land under the order

of the Judge was a temporary taking of the same for a public use, and that clause in the Constitution which prohibited the taking of private property for public use without compensation included a temporary taking, and that in the railroad Acts of 1861 and 1863, under which the order to take possession had been made, no provision was found for compensation for such temporary taking, and that therefore the Act was, so far as said taking was authorized, unconstitutional, and cited *Bloodgood* v. *The Mohawk and Hudson River Railroad Company*, 18 Wend. 9; *Powers* v. *Bears*, 12 Wis. 213; *Shepardson* v. *The Milwaukie and Beloit Railroad Company,* 6 Wis. 605; and *Newell* v. *Smith*, 15 Wis. 101.

*Campbell, Fox & Campbell,* for Respondent, argued that the corporation having availed itself of the order of the Court to take possession, and of the provision found in the thirty-fourth section of the Act of 1861 as amended in 1863, had by its act made itself liable for compensation when ascertained, and could not afterwards refuse to pay because the title had not passed, and that the proceedings could not fail for want of prosecution without the consent or laches of both parties, for the owner of the property could force the proceedings to a final judgment.

By the Court, CROCKETT, J:

The principal question in this appeal is; whether section 34 of the Railroad Act of April 27th, 1863, (Statutes 1861, p. 607; 1863, p. 610) is in violation of that clause in the constitution which provides that private property shall not be taken for public use without just compensation. The same question was before this Court in the case of *Fox* v. *Western Pacific Railroad Company,* 31 Cal. 538, and the decision was that the provision in question was not unconstitional. We are now asked to review that decision, and have less hesitation in doing so, inasmuch as the section under consideration has been materially modified by section 1254 of the Code of Civil Procedure, and we do not see how titles acquired under the Act of 1861 can now be disturbed, if the ruling in that case shall be somewhat modified.

Section thirty-four provides that at any stage of the pro-
ceedings for condemning lands for railroad uses, the Court
or Judge may enter an order authorizing the railroad com-
pany, if already in possession of the land sought to be con-
demned, to continue in the use and occupation; "and if
not in possession to take possession of, and use such prem-
ises during the pendency, and until the final conclusion of
such proceedings, and may stay all actions and proceedings
against such company on account thereof; provided, such
company shall pay a sufficient sum into Court, or give
security, to be approved by such Court or Judge, to pay
the compensation in that behalf when ascertained." The
"compensation" here referred to is that which shall be
awarded in that proceeding to the owner, if the land shall
be finally taken for public use. The Act is capable of no
other interpretation. If the proceeding shall ultimately
fail, and the land, for any cause, shall not be taken for
public use, no provision whatever is made in the statute for
securing to the owner compensation for the use of the land
and for waste committed upon it whilst the corporation was
in the possession. This omission has been supplied by
section 1,254 of the Code of Civil Procedure. But under
the Act of 1861, as amended in 1863, the corporation, on
giving the bond required by section 34, might enter upon
the land, demolish the buildings if there were any, destroy
the timber, dig up orchards and vineyards, make excava-
tions and embankments, and in fact might render the land
wholly valueless for any other than railroad uses. After
this devastation was accomplished, and the owner was de-
spoiled of his estate under the authority of law, the proceed-
ing for condemnation might utterly fail of its purpose, and
the land would not finally be taken for public use, nor sub-
jected to the servitude. In that event, the Court having ju-
risdiction of the proceeding could award no compensation to
the owner; and the bond given by the corporation could af-
ford him no redress, inasmuch as the damages he had
suffered would not come within its conditions. We should
then have a case in which the law had authorized a private
corporation to enter upon the lands of another, demolish his

buildings and convert the materials of which they were composed to its own use, and cut down his growing timber or dig the stone from his quarries, and after it was severed from the freehold and had become personal property, use it as it saw fit for the purposes of its incorporation. All this might be done under the authority of law, and in the meantime the owner would be compelled to stand by, with his hands tied and his mouth closed, whilst his personal property was being appropriated by another and his real estate was being devastated and wasted, without a pretense that any security had been given to which he can resort for indemnity. If the land should not be ultimately taken his only remedy would be an action in some form against the corporation. But in the meantime he has been wholly deprived of his personal property when severed from the realty, and his land may have been rendered utterly valueless, and that, too, under the authority of law. If a statute which accomplishes these results is valid, that clause of the constitution which prohibits private property from being taken for public use without just compensation, is an idle and meaningless phrase. In *Fox* v. *Western Pacific Railroad Company* the attention of the Court does not appear to have been particularly directed to this point. But, in delivering the opinion of the Court, Mr. Justice SANDERSON says: "Under this view, the only objection which can be urged against the statute is, that it may by possibility be made to justify a trespass, in the event the corporation should finally conclude not to take the land. But the answer to this is that the possibility does not exist; for the moment the time has passed for making the compensation, or the moment the corporation elects not to take the land, the shield interposed between it and the individual pending the proceedings on the score of trespass is withdrawn, and the latter has his remedy by action against the former for the recovery of his land and any damages he may have sustained by reason of the trespass. It will not do to say in reply to this that the remedy may be worthless by reason of the insolvency of the corporation. That happens every day, and in every conceivable case, and it is beyond the power of constitutions and statutes to prevent it."

We are unable to assent to this reasoning. In the case of an ordinary trespass, if one threatens to lay waste the lands of another, the aggrieved party has a remedy to prevent the wrong; or, if already committed, he may promptly proceed to procure redress. The law affords him all the aid that is possible under the circumstances. But under this statute the owner of the estate is powerless.

The statute protects the aggressor whilst he is despoiling the estate and converting the personal property to his own use, under the pretext that it is being devoted to the public use. The whole proceeding is based on the assumption that the property is needed and is to be devoted to the public use; and after the owner has been deprived of his personal property, and of the use and enjoyment of his real estate, which is restored to him, if at all, in a damaged condition, the corporation should be estopped to deny that the personal property was "taken" and the real estate used for a public use. Whatever benefit was derived or damage suffered from the conversion and use of the property, grew out of and were founded upon a proceeding authorized by the statute for condemning the property to a public use; and, though the land itself may not ultimately be "taken," the use of it pending the proceeding, together with personal property which has become such by being severed from the realty, have been lost to the owner, who is as effectually deprived of them as though they had been taken under the most formal proceedings for the purpose of condemning them to a public use.

In effect, the statute permits the corporation to deprive the owner of the use and enjoyment of his land for an indeterminate period; continuing, however, as long as the proceedings for condemnation are pending; and that, too, without any remedy whatever for compensation in case the proceeding ultimately fails. On being let into possession the corporation, it is true, has not acquired and may never acquire the title of the owner. But it has acquired a right to the possession and use of the land for an uncertain period; and this constitutes an estate in it, similar in its nature to that held by a tenant whose term is to cease on the hap-

pening of a future uncertain event, or by a purchaser in possession under an executory contract, which is subject to be defeated by the non-performance of a condition subsequent. The interest thus acquired by the corporation, though less than the fee, is, nevertheless, an estate in the land, of which the owner has been deprived, not only without compensation, but without any security whatever. However the rule may be in respect to the time at which the entire title and estate of the owner will be deemed to have been taken for public use, it is indisputable that the qualified estate which the corporation acquires when it enters under the authority of the Court must be deemed a taking *pro tanto*, from the time of the entry. For this taking no compensation whatever is provided by the Act if the proceedings for condemnation fail. We think the shield of the Constitution was intended to cover such a transaction, and that the citizen cannot be thus despoiled of his estate without any provision whatever for his compensation. We are, therefore, of opinion, that the section of the statute on which we have commented is unconstitutional and void.

We are not called upon, in this case, to determine whether the result would have been different, if the statute had contained a provision like that in section 1254 of the Code of Civil Procedure, requiring the bond to provide for the payment of all " damages which may be sustained by the defendant, if, for any cause, the property shall not be finally taken for public use." It will be time enough for us to decide upon the sufficiency of the statute, as it now is, when a case arises which involves the question.

Order dissolving the injunction reversed, and cause remanded.

Rhodes, J., Wallace, C. J., and McKinstry, J., concurring:

We concur in the judgment and in the proposition upon which it is mainly based—that the occupation of land by the corporation for its own purposes, pending the proceedings for condemnation, is a taking of the property within

the meaning of the Constitution, and that as the bond does does not cover such taking, the section of the statute under consideration is void.

Mr. Justice NILES did not express an opinion.