### HENRY et al. v. UNITED STATES.
### No. 4371.

Circuit Court of Appeals, Third Circuit.
Jan. 20, 1931.

Frank A. Harrigan, of Philadelphia, Pa., for appellants.

Calvin S. Boyer, Acting U. S. Atty., and Mark Thatcher, Asst. U. S. Atty., both of Philadelphia, Pa.

Before BUFFINGTON and DAVIS, Circuit Judges, and JOHNSON, District Judge.

DAVIS, Circuit Judge.

This is an appeal from a decree dismissing a petition for a rule upon the United States to show cause why the decree of June 9, 1921, condemning lands in Bucks county, Pa., should not be set aside.

On January 7, 1919, the United States, by Newton D. Baker, then Secretary of War, filed a petition in the District Court for the condemnation of certain properties aggregating 1,073 acres of land situated partly in Falls township and partly in the borough of Tullytown, Bucks county, Pa., averring inter alia that a state of war existed between the United States and the Imperial German gov-

ernment and Imperial and Royal Austria-Hungarian government; that the United States had contracted for the construction and operation of what is known as the bag loading plant of the munitions plant at Tullytown for the manufacture of munitions for war; that the land in question was needed for the site of the munitions plant which was necessary for the manufacture of munitions for war and for military purposes.

In due time the Jury of View appointed to assess the damages made its award, and the United States appealed therefrom. Thereafter, on May 6, 1921, verdicts were rendered in the case of each property owner upon which judgments were entered June 6, 1921. On June 9, 1921, orders of condemnation were entered by the court, and title to the property became vested in fee simple in the United States upon payment of the awards and the execution and delivery of warranty deeds by the owners. However, two of the plaintiffs, George H. Custer and Henry William Bibus, conveyed their land to the United States without condemnation proceedings.

The United States took possession of the property, and nothing further was done by the appellants for nearly nine years, until after the United States had sold the properties at greatly increased prices. They then on January 17, 1930, filed a petition in the District Court for a rule on the United States to show cause why the decree of June 9, 1921, condemning the properties should not be vacated. An answer was filed in the nature of a demurrer to the petition, which, after argument, the court dismissed on February 4, 1930.

There is no question about the regularity of the proceedings to condemn the lands under the Acts of August 1, 1888 (25 Stat. 357 [40 USCA §§ 257, 258]) and July 2, 1917 (40 Stat. 241), as amended by the Act of April 11, 1918 (40 Stat. 518 [50 USCA § 171]). There may be some question as to whether or not the decree of condemnation of July 9, 1921, was valid in view of the Act of July 11, 1919 (41 Stat. 128), which provides that no part of the appropriations made therein or of any unexpended balances of appropriations theretofore made for the support and maintenance of the army or the military establishments should be expended for the purchase of real estate or for the construction of army camps or cantonments with certain exceptions not here material. The Act, however, did not expressly forbid the condemnation of lands, which in the instant case had been begun six months before it was

passed, except in so far as it might be inferred that implicit in the Act was the prohibition of condemnation of real estate for which the Act forbade the expenditure of money. But the mere fact that Congress limited the expenditure of the money therein and theretofore made does not render the law providing for the taking of the land invalid. United States v. Gettysburg Electric Railway, 160 U. S. 668, 683, 16 S. Ct. 427, 40 L. Ed. 576.

■■ There are other difficulties which stand in the way of the appellants than the alleged invalidity of the decree of condemnation. If this decree were set aside, the deeds of conveyance would still remain and the title to the properties would continue to be vested in the United States by virtue of these deeds. Central Pennsylvania Lumber Co. v. Bristol, 250 Pa. 61, 95 A. 383. When a property owner accepts the award of damages for taking his property under eminent domain, he cannot raise the question as to the validity of the proceedings or taking. He waives his right of appeal, even though the law authorizing condemnation is unconstitutional. Sherman v. McKeon, 38 N. Y. 266; Town v. Town of Blackberry, 29 Ill. 137, 141; Kile v. Town of Yellowhead, 80 Ill. 208; Hartshorn v. Potroff, 89 Ill. 509; Moore v. Roberts, 64 Wis. 538, 541, 25 N. W. 564; Schatz v. Pfeil et al., 56 Wis. 429, 14 N. W. 628; Glassburn et al. v. Deer et al., 143 Ind. 174, 41 N. E. 376; Baltimore, O. & C. R. Co. v. Johnson, 84 Ind. 420.

■ Further, the appellants did not return, or offer to return, the purchase price of the properties. This failure is not in accord with the maxim that he who seeks equity must do equity, although, in granting equitable relief, the court may require the plaintiff to do what he should voluntarily have offered to do, but the failure to make the offer in the pleadings is generally ground for denial of relief when the question is raised by demurrer, as here. Paton v. Northern Pacific Railroad Company (C. C.) 85 F. 838, 843, 844; Twin Lakes Land & Water Company v. Dohner (C. C. A.) 242 F. 399, 402.

■ But, assuming that the validity of the decree is doubtful, the appellants waited nearly nine years before asserting their rights. If their rights were violated, the law provides a remedy, but it also provides a time within which that remedy must be invoked. It is true that laches is not a mere matter of time, yet courts will refuse to grant relief when there is inexcusable delay and the rights of third parties have intervened. As above stated, there was no step whatever taken by the appellants to set aside the decree of condemnation and the deeds of conveyance for nearly nine years and not until the government had sold the properties for many times more than was paid for them. It may be unfortunate for the appellants that they accepted the condemnation award, received the money, and did not contest the proceedings from the beginning, or at least from the passage of the Act of July 11, 1919, upon which they rely, but they did not, and the fault of not doing so is entirely their own. While there is no statute of limitations in equity, yet it generally in this respect follows the law, and will, in the absence of special extenuating circumstances, not here present, regard the delay as inexcusable and refuse relief after the time of the statute of limitations in that particular locality has expired. The statute of limitations in Pennsylvania, as well as in most other states, is six years. This had expired three years before proceedings were started to set the decree aside. This would ordinarily bar the relief sought, if there were no other insurmountable obstacles standing in the way.

■ But in the case at bar many terms had passed after the final decree of condemnation had been entered, and no principle is better settled or of more universal application than that no court can reverse its own final decrees or judgments for errors of fact or law after the term in which they have been rendered has expired, except for clerical mistakes. Guffey v. Gulf Production Company (C. C. A.) 17 F.(2d) 930; Sibbald v. United States, 37 U. S. (12 Pet.) 488, 9 L. Ed. 1167; Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 797; Phillips v. Negley, 117 U. S. 665, 674, 6 S. Ct. 901, 29 L. Ed. 1013.

Whatever one's sympathy may be, well-established rules of law and equity found by long experience to be wise and in the end best for all the people as a whole may not be discarded and set aside, in the absence of special circumstances and sound reason therefor.

It follows that the decree dismissing the petition must be affirmed.