[Civ. No. 13242. Second Dist., Div. One. Oct. 21, 1941.]

THE PEOPLE, etc., By and Through the Department of Public Works, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

Holloway Jones, Clifford D. Good, George C. Hadley, Lincoln V. Johnson and Francis J. Carr for Petitioner.

J. H. O'Connor, County Counsel, Douglas De Coster, Deputy County Counsel, and George H. Francis for Respondents.

DORAN, J.—Petitioner herein seeks a writ of mandate to compel respondents to enter a judgment dismissing a condemnation proceeding upon motion of petitioner made in the court below pursuant to the provisions of section 1225a of the Code of Civil Procedure, which motion was made after petitioner had filed a notice of abandonment of the said proceedings in accordance with the provisions of the said section of the code above referred to. The notice in question stated that petitioner abandoned the said proceedings as against one parcel of land concerned therein, for which parcel one Frank Monteleone and Lucy Monteleone had appeared as defendants. The notice of abandonment was filed over a month prior to the date set for trial of the condemnation action and the motion for judgment of dismissal was made prior to the trial date.

In opposition to petitioner's motion for dismissal the defendants above named interposed a "plea of equitable estoppel" based upon the claim, as therein stated, that petitioner, by its complaint in the condemnation proceeding and by its resolution of intention, sought to condemn and take away not only a portion of the defendants' property, but also certain rights of ingress and egress from defendants' said property; that the said rights of ingress and egress had been greatly impaired by physical operations already undertaken by petitioner under an order of immediate possession of property concerned in the condemnation proceeding; and that, in view of the progress already made on the public improvement in question, defendants' rights above mentioned would soon be destroyed. Further, that petitioner did not propose to abandon the said improvement contemplated in its original resolution of intention, but, to the contrary, was proceeding diligently and rapidly to the completion thereof; and that the motion to dismiss as to the parcel in question was not made in good faith, but for the purpose of vexing defendants with successive experiments in

litigation in order for petitioner to arrive at the price it desired to pay; and that the motion for judgment of dismissal was made in order to avoid the full responsibility imposed upon petitioner.under the eminent domain laws of the state. Other statements to the same effect were made by defendants in their said plea. Defendants further contended therein that in the absence of a revocation of the ordinances of intention, or an abandonment of the *entire* proceedings, petitioner has no right to dismiss as to only one parcel of land under a single and different ownership than that of the other lands in the said proceeding; and that petitioner is bound by the rules of equity to prosecute their condemnation case against defendants to final judgment. The court below denied petitioner's motion for judgment of dismissal, whereupon petitioner made its present application for a writ of mandate. In their answer to the petition herein respondents adopt the contentions made by the defendants Monteleone in the court below on the motion for dismissal of the condemnation proceeding.

Insofar as here pertinent, section 1255a of the Code of Civil Procedure states: "Plaintiff may abandon the proceedings at any time after filing the complaint and before the expiration of thirty days after final judgment, by serving on defendants and filing in court a written notice of such abandonment. . . . Upon such abandonment, express or implied, on motion of any party, a judgment shall be entered dismissing the proceeding. . . . " The section just quoted is included in Title VII of the code, governing proceedings in eminent domain.

In *Pool* v. *Butler*, 141 Cal. 46 [74 Pac. 444], at p. 49, it is stated: "The proceeding in eminent domain is an exercise of the sovereign power of the state, though the state does not appear upon the face of the record as a party. The owner of the land sought to be appropriated to a public use may voluntarily agree with the agent of the state as to price, and convey it to the person or corporation who may desire it for a public use, but in the proceeding under the statute there is no element of contract. It is an adversary proceeding wherein the state appropriates the use of the land to the public, subject only to the requirement of the Constitution that the land shall not be taken or damaged for public use without just compensation having been first made or paid

into court for the owner. (Const., art. 1, sec. 14.) But a plaintiff seeking to condemn land for a public use does not, by bringing the action to condemn, bind himself to take the land and pay the compensation fixed by the court or jury, since it may be so great as to make the proposed use impossible, or the delay in obtaining the right to use the land for the purpose intended may permit another to acquire a competitive use of other lands for the same purpose, and thus make his use undesirable, even if the compensation were reasonable. Hence a plaintiff in such action is conceded to have a right to abandon the proceeding and decline to take the land, the question then being, at what stage of the condemnation proceedings may he abandon the enterprise or decline to take the property? Pending the motion for a new trial, and later, pending the appeal, it is clear that plaintiffs were not bound to pay or deposit the damages assessed upon the trial; and it is equally clear by the motion and the appeal that the defendants refused to accept payment, at least until they had exhausted all their resources to defeat the condemnation, and during all that time the plaintiffs had the right to abandon the enterprise and refuse to pay the compensation assessed by the court.''

In *Southern Pac. R. R. Co.* v. *Reis Estate Co.*, 15 Cal. App. 216 [114 Pac. 808, 810], at p. 218, it is stated: ''We think it unnecessary to determine the character of right with reference to dismissal which a plaintiff may possess in proceedings of this character after verdict and before final decree of condemnation. That he is entitled to abandon the claim to the property and ask a dismissal before the expiration of thirty days from the entry of the judgment has been determined in *Pool* v. *Butler*'' (*supra*). The court in the Southern Pacific R. R. case assumed, without deciding, that such right of dismissal is within the discretion of the court only, but held that the trial court in there granting plaintiff a dismissal had not abused any discretion. Plaintiff there had moved to dismiss, within thirty days after trial and a verdict fixing the amount of compensation and damages, upon the grounds ''that the damages and values fixed by the jury were excessive, and a dismissal of the case was an abandonment by the plaintiff of its claim for the property.'' Chief Justice Beatty dissented from the order denying a hearing of this latter case in the Supreme Court, stat-

ing: "It is not decided, and I do not think it ought to be held, that where the whole controversy in a condemnation case is over the compensation to which the land owner is entitled, the plaintiff has the unqualified right to dismiss the proceeding upon payment of costs after he has subjected the defendant to heavy expenses in addition to court costs in the legitimate effort to prove the loss and damage that he will sustain in consequence of the condemnation sought. This was the main question in the case, but it is left undecided. . . . "

In *Metropolitan Water District* v. *Adams,* 16 Cal. (2d) 676 [107 Pac. (2d) 618], recently before the Supreme Court of this state, respondents took the position that when possession of the land is taken by a plaintiff under order of court in a condemnation proceeding, the contemner's right to the property becomes vested, and concurrently the property owner's right to the payment to him of a sum of money for such taking becomes vested. In other words, that the act of taking possession irrevocably fixes the respective rights of the contemner and the landowner, and that after possession is thus taken of the land, the contemner becomes the vested owner of the land. The court held that such a position could not be sustained, first, because the law does not provide for absolute immediate payment, second, the act of taking possession does not irrevocably fix the rights of the parties, because one of the possible issues in every condemnation case is whether there is any public necessity to take the owner's land, and should this issue be decided against the plaintiff, the proceeding terminates and the owner is restored to the possession of his land; and lastly, because the plaintiff may abandon the proceeding at any time before the expiration of thirty days after final judgment by serving upon defendant and filing in court written notice of such abandonment. The court then stated: "While the plaintiff by abandoning the proceeding subjects himself to the payment of certain costs and expenses incurred by the defendant, the service and filing of said notice *ipso facto* terminates the proceeding, except in those rare instances in which the contemner is estopped from availing itself of the right of abandonment."

Respondents have cited *City of Los Angeles* v. *Deacon,* 3 Cal. (2d) 641 [46 Pac. (2d) 165], and *Times-Mirror Co.* v. *Superior Court,* 3 Cal. (2d) 309 [44 Pac. (2d) 547], in sup-

port of their position. Insofar as these cases concern the right of abandonment of a condemnation suit they can have no application here, as the abandonment considered in both cases was attempted after the time allowed therefor by the provisions of section 1255a, *supra.* It cannot be disputed that plaintiff in the instant case filed notice of abandonment within the time provided by the code. As far as the application of the doctrine of estoppel is concerned, the Times-Mirror and Deacon cases both present a set of facts entirely different from the circumstances of the instant case. In the Times-Mirror case the property owner had actually changed its position as the result of the condemnation proceedings and in reliance upon the contemner's taking the property. The doctrine of estoppel does not appear to have been discussed in the Deacon case. In passing, it should be stated that the court in the Deacon case pointed out the fact that the case of *Pool* v. *Butler, supra,* was decided before the enactment of section 1255a. However that may be, the reasoning in the quotation hereinabove given from the Pool case may be applied to the situation in the instant case under the provisions of section 1255a. Moreover, it would appear that the only change wrought in the situation by the enactment of section 1255a was that of limiting the right of abandonment to thirty days after final judgment. (See *City of Los Angeles* v. *Deacon, supra,* at page 649.)

From the foregoing it would appear that petitioner, as plaintiff in the condemnation proceeding, was well within its rights in serving and filing notice of abandonment at the time it did, and that in the absence of a positive showing of very unusual circumstances the court would not be justified in denying plaintiff's motion for judgment of dismissal, assuming that the matter of such dismissal rested in the discretion of the court. In this connection, it is difficult to perceive of a situation existing before the trial of a condemnation action wherein the plaintiff could be estopped from abandoning the proceeding.

The defendants in their plea, raised in opposition to petitioner's motion for judgment of dismissal in the court below, have stated no grounds for estoppel. The statements there made by defendants and adopted here by respondent merely reveal the possible existence of a cause of action for damages to defendants' real property as the result of the

operations of petitioner. This is a matter entirely independent of the question of the appropriation of the real property to a public use, and one for which the defendants may institute an independent action for damages without prejudice to their rights. (*McCandless* v. *City of Los Angeles*, 214 Cal. 67 [4 Pac. (2d) 139].) The contention that petitioner may not abandon condemnation proceedings as against any one parcel of property without abandoning the entire project is without substance. If, after the institution of a condemnation action, a plaintiff should determine that a certain parcel of land is not necessary in the operations contemplated, there is no law to prevent an abandonment of proceedings against the land in question; and the right of a plaintiff to abandon condemnation proceedings is not affected merely by the fact that the property in question may have suffered damage through plaintiff's operations.

Under the circumstances here presented, it appears that there was no good cause shown for the denial of petitioner's motion for judgment of dismissal under section 1255a of the Code of Civil Procedure. Moreover, the provisions of section 1255a, *supra,* here in question are similar to those of section 583, wherein it is provided that any action shall be dismissed by the court unless such action is brought to trial within five years after the filing thereof, unless the parties have stipulated in writing to an extension of time. Section 583, in that respect, has been held mandatory upon the court. (*Andersen* v. *Superior Court,* 187 Cal. 95 [200 Pac. 963].) Under the provisions of section 1255a it would also appear that a plaintiff in a condemnation proceeding has an absolute right to abandon the action and obtain a judgment of dismissal, within the time provided, unless, for some conceivable reason, the plaintiff is estopped from so doing. In that connection, the following language in *Andersen* v. *Superior Court, supra,* at page 100, is pertinent:

"But, conceding that there may be equitable grounds of estoppel to the enforcement of the dismissal of an action under section 583 of the Code of Civil Procedure . . . the question to be first presented to this court under a *mandamus* proceeding would be one of law, as to whether the facts pleaded and passed upon by the trial court constituted a sufficient ground for denying the motion to dismiss. It cannot be claimed that it is a matter within the discretion of

the trial court to arbitrarily determine what extraneous circumstances will excuse a compliance with the statute.''

The above quotation from the Andersen case applies with equal force to the situation presented upon a motion for dismissal of a condemnation action under the provisions of section 1255a. The provisions of section 1255a regarding the dismissal of such actions are mandatory upon the trial court.

For the foregoing reasons, a peremptory writ of mandate requiring the Superior Court of the County of Los Angeles to enter a judgment dismissing the said condemnation proceeding as to the parcel of land in question is granted.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied November 12, 1941, and respondent's petition for a hearing by the Supreme Court was denied December 18, 1941. Houser, J., and Carter, J., voted for a hearing.

On January 12, 1942, the following opinion was filed:

CARTER, J., Dissenting.—In my opinion, respondents' petition for a hearing should be granted and this case should be heard and determined by this court. The background forming the basis for the decision here in question is that the State of California commenced an action in eminent domain against Frank Monteleone and wife, and others to condemn various parcels of land and right of access therefrom, to and onto the public highway. The property was sought to be thus acquired for highway purposes. Upon commencement of the action the state, pursuant to article I, section 14 of the Constitution of California, obtained an order for immediate possession of the property and rights to be taken and damaged, and took possession of the same thereunder. Thereafter, the state proceeded with and completed the construction of the highway. Defendants' property involved in that action abuts on Cottage Home Street, a short street in Los Angeles, which stopped at a hill on one end and intersected Figueroa Street at approximately a right angle on the other end. There are no cross streets intersecting Cottage Home Street between the points above-mentioned and the only means of access to that street and to the property abutting thereon, was Figueroa Street. The state's plan of construction as set forth in its

complaint in the action called for the taking and using of a portion of the side of defendants' lot for a foundation for a fill, the plan being that the improvement of Figueroa Street would require its elevation to a point 14 feet higher than that formerly existing. After commencement of the action, the state changed its plan in that the sides of Figueroa Street where that street crossed Cottage Home Street would consist of perpendicular concrete walls, thus eliminating the necessity of a resting place for the toe of a fill on defendants' lot. It proceeded to grade Figueroa Street in that fashion, with the result that defendants' property is on a street which is closed by a hill at one end, and a 14-foot wall along Figueroa Street at the other. All right of access from defendants' property to Figueroa Street is thereby destroyed. *Thus, the state in no way abandoned or discontinued its project to take defendants' right of access and damage their property.* On the contrary, it proceeded according to plan to accomplish and did accomplish that precise result. After all this had transpired, the state then filed a notice of motion to dismiss its condemnation action as to defendants. To that motion defendants pleaded equitable estoppel, and the trial court denied the motion. In the instant proceedings the District Court of Appeal granted a writ of mandate compelling the trial court to grant the motion to dismiss.

The statutory authority for the dismissal by a condemner of its action in eminent domain is section 1225a of the Code of Civil Procedure. Although this section authorizes the abandonment of the "proceedings" by the condemner, I think it is clear that it was not contemplated that it should be applicable when the condemner has already under authority of its action, taken or damaged the property involved therein. Furthermore, the word "proceedings" is sufficiently comprehensive to include the execution of the improvement by the condemner. In the case at bar *the state has not abandoned its project, the basis of its action, but has carried it to completion.* It did not dismiss as to the other defendants, and therefore the proceedings are not abandoned.

The defendants' right of access, a real property right, has been taken, and as a result thereof their lot has been damaged. There is and can be no dispute about that. Title to that right of access has passed to the state. There is no logical reason, just or otherwise why the defendants should be compelled to

initiate an action on their own behalf to obtain the just compensation to which they are apparently entitled under the constitutional guarantee. Let us suppose that a condemner acquired possession of property upon which there were extensive and valuable improvements by virtue of its eminent domain action. Thereafter, but before the trial of the action, the condemner commences construction of its project and in the process demolishes the buildings and makes deep excavations in the land. It then asks for a dismissal of the eminent domain action. Under the principles enunciated in the decision of the District Court of Appeal, the dismissal would be permitted. The land owner would be compelled to commence his action for damages and assume the burdens incident thereto. He would suffer delay in obtaining the compensation to which he is entitled, which would necessarily occur before the matter could be finally adjudicated. He could not recover interest on the amount of the award until the date of the judgment, even though the condemner had taken possession long prior thereto. This would deny to the property owner a right which this court held he was entitled to in *Metropolitan Water District* v. *Adams,* 16 Cal. (2d) 676 [107 Pac. (2d) 618]. Furthermore, the condemnor might not be financially able to pay the amount of the judgment when recovered. There is no difference between that illustration and the case at bar. Here the defendants' right of access has been irrevocably taken and destroyed.

The decision of the District Court of Appeal is predicated upon the premise that the state may or may not, as it chooses, take or damage the owner's property in the exercise of its sovereign power of eminent domain, and thus may dismiss its action commenced in the aid of that power when it determines not to take or damage the property. As a general principle that is entirely sound. The fallacy exists in its application to the instant case. Here, although the state asserted in its motion to dismiss that it is not taking or damaging defendants' property, its actions speak with more force than its assertion. The facts as evinced by its actions show beyond cavil that it has already taken and damaged the defendants' property whatever it may claim to the contrary. It might logically follow from the judicial determination that the state may dismiss, that one of the factors adjudicated in the dismissal is that the state is not damaging or taking defendants'

property, and when the owners claim in their subsequent ac-
tion that the taking and damaging has occurred, the state will
plead *res judicata* on that issue. The case of *Pool* v. *Butler*,
141 Cal. 46 [74 Pac. 444], relied upon by the District Court
of Appeal is not in point because it is not concerned with a
case where there was in fact a taking or damaging prior to
the request for dismissal. In *Metropolitan Water District* v.
*Adams, supra,* there existed nothing more than a taking of
possession by the condemner. There was no abandonment
or dismissal in that case.

The decision of the District Court of Appeal entirely ig-
nores the case of *People* v. *Joerger*, 12 Cal. App. (2d) 665
[55 Pac. (2d) 1269], where the rule is stated at page 668:

"It follows that if entry into possession by plaintiff under
the order mentioned, and *the various acts of ownership per-
formed by plaintiff constitute a 'taking'*, then appellants were
entitled to the compensation. Our Supreme Court has de-
cided very definitely that the act of the state in entering into
possession of the property and proceeding to *construct the
highway was a 'taking' of the property* as that term is used
in the provisions of the Constitution above quoted. [Em-
phasis added.] In 1897 the legislature of California at-
tempted to place in the Code of Civil Procedure by an amend-
ment to section 1254, a law which is almost identical to the
amendment of section 14, article I of our Constitution, adopted
in 1918. The constitutionality of section 1254 was challenged
in the case of *Steinhart* v. *Superior Court,* 137 Cal. 575 [70
Pac. 629, 92 Am. St. Rep. 183, 59 L. R. A. 404]. The court
there states, on page 577, that the most important proposition
is whether or not taking possession and using the property
during the pendency of the condemnation proceeding is a
taking, within the meaning of the Constitution. In disposing
of the matter the court says: 'To hold that possession of land
may be given to a person seeking to acquire a right-of-way by
condemnation, during the pendency of the proceedings and
before the amount of the compensation has been determined
and paid to the owner or into court for him, would be to hold
that this so-called temporary possession is not a taking of pri-
vate property for a public use. But both on authority and
reason it is so.' The section was held unconstitutional, and
the trial court was prohibited from making any order for
possession thereunder. Once before the precise point came

up in the Supreme Court. In 1863 the legislature attempted to give the railroads this same power of possession, pending an action in condemnation. In the case of *Davis* v. *San Lorenzo R. R. Co.,* 47 Cal. 517, the enactment was held unconstitutional, and we find the following language pertinent to the question here involved: 'However, the rule may be in respect to the time at which the entire title and estate of the owner may be deemed to have been taken for public use, it is indisputable that the qualified estate which the corporation acquires when it enters under the authority of the court must be deemed a *taking pro tanto,* from the time of entry.' These cases follow the general rule. '*It may be stated as a general rule that there is a taking where the grantee of the power of eminent domain enters upon the land, not for the mere purpose of examination or survey, and does some act evidencing an intention to appropriate it.*' (20 C. J., p. 723, sec. 182.) The evidence of an intent upon the part of the plaintiff in the instant case to 'appropriate' the property of appellants is overwhelming and beyond dispute.''

The fundamental rules on this subject are stated in 20 Corpus Juris at page 1078:

''The abandonment [dismissal by the condemner] must be in good faith and must be a complete surrender of the project so far as the land involved is concerned. The condemning party cannot resort to experimental suits and assessments, nor can it, while persisting in the avowal of its purpose to condemn the land, withdraw from the inquisition and the judgment thereon because dissatisfied with the result, in order to seek by other methods to procure a smaller valuation of the desired property. And where an abandonment of the proceedings would violate a contract made with the owner or private rights have otherwise attached which would be prejudiced by the abandonment, it will not be allowed.''

The effect of the decision of the District Court of Appeal in this case and the order of this court denying a hearing therein is to permit the state or any of its political subdivisions to take or damage private property for a public use by means of the artifice or device of commencing an action in eminent domain to condemn such property, obtain an order for immediate possession thereof, construct the public improvement contemplated, and then before the action is tried and the amount of compensation and damages to which the

property owner is entitled are determined, dismiss the action, withdraw the amount deposited as security to the property owner upon obtaining the order for possession, and relegate the property owner to an action for damages for the taking and damaging of his property in violation of section 14 of article I of the Constitution of California. I am firmly of the opinion that such procedure was never contemplated by the framers of our Constitution or the legislature in enacting the code provisions under which it is now claimed by petitioner it is permissible, and it is clear to my mind that such constitutional and statutory provisions are not susceptible of the interpretation contended for by petitioner.

In my opinion the trial judge was right in denying plaintiff's motion to dismiss the action and petitioner's application for a writ of mandate should likewise be denied.

Houser, J., concurred.