OKLAHOMA CITY, a Municipal Corporation,
Plaintiff in Error,

v.

G. C. COOPER, Bernard Cooper, and Elizabeth Maulding, nee Cooper,
Defendants in Error.

No. 40682.

Supreme Court of Oklahoma.

Jan. 25, 1966.

As Amended March 22, 1966.

Rehearing Denied March 22, 1966.

Second Petition for Rehearing Denied
April 19, 1966.

Certiorari Denied Oct. 17, 1966.

See 87 S.Ct. 203.

Roy H. Semtner, Municipal Counselor, James G. Hamill, Charles E. Chilton, Asst. Municipal Counselors, for plaintiff in error.

Charles Hill Johns, Oklahoma City, for defendants in error.

Oklahoma Association of Municipal Attorneys, by Charles E. Norman, City Atty., Tulsa, and John Allen Phillips, II, City Atty., Durant, amici curiæ.

IRWIN, Justice.

In July, 1941, the City of Oklahoma City, hereinafter referred to as City, commenced eminent domain proceedings to acquire land for reservoir purposes. By virtue of these proceedings, City acquired certain lands and what is now known as "Lake Hefner" was constructed.

Included in the 1941 eminent domain proceedings were three tracts of land which were owned separately by G. C. Cooper, Bernard Cooper, and Elizabeth Maulding, nee Cooper, defendants in error in the instant appeal and hereinafter referred to as plaintiffs.

On March 22, 1960, the Council of City adopted a resolution wherein it found and declared that 23.85 acres, more or less, which were specifically described, and another tract containing 33.14 acres, more or less, were " * * * surplus, not needed for reservoir or public purposes, and should be sold". The 23.85 acres form a part of the three tracts previously owned separately by plaintiffs, and which were condemned in the 1941 proceedings, and is the acreage involved in this action.

On March 31, 1960, plaintiffs commenced the instant action to vacate, set aside and annul the 1941 condemnation proceedings insofar as the same concerns 24.61 acres specifically described. The 24.61 acres described in plaintiffs' petition and the 23.85 acres described in City's Resolution of March 22, 1960, constitute the same tract of land and will be referred to as the 24.61 acre tract. The alleged grounds for vacation of that portion of the 1941 condemnations, wherein City acquired the 24.61 acres were that the same were not needed for reservoir purposes or other public purposes and that extrinsic legal fraud was practiced or perpetrated by City in taking said property by eminent domain proceedings. In plaintiffs' amended petition, Count 2, plaintiffs alleged that City had completely abandoned the use of the 24.61 acres for reservoir purposes, and title to said property by virtue of such abandonment reverted to plaintiffs.

The trial court found City at no time perpetrated, or was guilty of any intentional fraud, but the agents and employees of City, by their acts and deeds, concealed and withheld certain facts which they had the duty to reveal and disclose, all of which constitute legal resulting, constructive and extrinsic fraud and bad faith and caused City to abuse its discretion insofar as the 24.61 acre tract is concerned. The trial court further found that City failed to disclose to the trial court in the 1941 eminent domain proceedings that it was not necessary for City to acquire the 24.61 acres in order to protect the water reservoir from possible pollution, inasmuch as City, at the time of such taking, was completely aware of the fact that it could adequately protect the reservoir from possible pollution emanating from surface water from the 24.61 acres without the taking and acquisition thereof; and that by reason of City having full knowledge of such facts and concealing and neglecting to disclose the same, City has been guilty of legal resulting, constructive and extrinsic fraud, bad faith and abuse of discretion in the premises.

The trial court vacated the judgment rendered in the eminent domain proceedings which were commenced in 1941, insofar as said proceedings concern the 24.61 acres involved herein and entered judgment for plaintiffs and directed they pay City the sum of $2,461.00, being the sum originally received for the property. City perfected this appeal from an order overruling its motion for a new trial.

## FACTS

Plaintiffs were the owners of the S½ NE¼ and part of the N½ NE¼ of Sec. 2, 12 N, 4 W, Oklahoma County, when the 1941 eminent domain proceedings were commenced and all of their land was included in said proceedings. The 24.61 acres herein involved are located in the S½ S½ NE¼ and extend across the entire south boundary of said quarter section. It is an irregular tract and measures approximately 2624 feet east and west, and from 56.8 feet to 500 feet north and south. The acreage was unimproved and is located on the southern side of Lake Hefner.

Two tracts of land hereinafter described as the "Stevens Tract" and the "Srivener Tract" were not condemned in the 1941 proceedings. Plaintiffs' theory is that if it were not necessary to condemn these tracts, then it was not necessary to condemn the 24.61 acres.

The "Stevens" owned the west 79.38 acres of the NW¼ of Sec. 1, 12 N, 4 W, Oklahoma County. This acreage is contiguous to the land previously owned by plaintiffs. In the 1941 condemnation proceedings, the 79.38 acres owned by the "Stevens" were specifically described but there was excepted from such proceedings a 10 acre tract on the south end of the 79.38 tract. This 10 acre tract, which will be referred to as the "Stevens Tract", and which was not condemned in the 1941 proceedings, was highly developed and is contiguous to the 24.61 acres herein involved.

The "Scriveners" owned the remainder of the NW¼ of Sec. 1, 12 N, 4 W, and all of this land was condemned except a

small tract in the northeast corner which was highly developed. That part of the "Scriveners" land which was not condemned was specifically excepted from the 1941 proceedings and will be referred to as the "Scrivener Tract".

In the 1941 condemnation proceedings, another landowner had contested the necessity of taking his property for reservoir purposes and there was introduced in evidence the fact that City had excepted from said proceedings the "Stevens Tract" and the "Scrivener Tract". In those proceedings, a Mr. V. V. Long, a consulting engineer, had testified that the "Stevens Tract" and the "Scrivener Tract" were not condemned. In Mr. Long's testimony, so adduced, he testified that the two properties were " * * * exempted for just and simple reason of economics. Both of those properties were highly developed and it would cost the City considerable money, * * * and they could be controlled fairly well insofar as pollution is concerned."

Although City challenges the admissibility of Mr. Long's testimony, we will assume such testimony to be admissible for the purpose of determining this appeal.

In the Findings of Fact, the trial court found that City "withheld and did not make a complete disclosure of the facts (as so testified to by V. V. Long, as aforesaid), and such facts so withheld and concealed by the City * * * were facts indispensable and essential as a condition precedent to the power and right of the City * * * to take and acquire in Eminent Domain the private property of plaintiffs herein; that said facts so withheld and concealed were withheld from the court in the original condemnation proceeding and from plaintiffs herein, and the concealment of such facts, so admitted in such testimony, constituted legal fraud, extrinsic to the record, and constituted legal fraud affecting the jurisdiction and power of the court in the original action to extend to the City * * * the right to take and acquire the private property of plaintiffs herein in Eminent Domain".

City produced evidence from expert witnesses that the overwhelming majority, if not all, of the 24.61 acres herein involved were within 660 feet of the high water mark of the proposed reservoir when the 1941 condemnation proceedings were commenced. A Mr. Herman, who was a registered engineer and employed by City when the 1941 condemnation proceedings were had, stated that the land involved slopes toward Lake Hefner; and that the 24.61 acre tract was necessary for the protection of Lake Hefner at the time City condemned it and that it is still necessary for such protection. A Mr. Karl Bean, a registered engineer and employee of City when the land was originally condemned, stated that he made a survey of the land for the 1941 condemnation proceedings and that it was necessary to condemn the property " * * * in order to protect the lake from contamination and to act as a buffer zone for the lake reservoir property."

Although plaintiffs argue there has been no change in conditions since the 1941 condemnation proceedings, the record discloses that a sanitary diversion ditch has been constructed around the southern shore of Lake Hefner, which diverts polluted water from draining into the lake from the south (this also includes the 24.61 acres in question) and when this project was completed in 1959, the high water line and the 660 feet water line, which had existed since 1941, were changed.

The record also discloses that on May 22, 1962, the City Council enacted a resolution rescinding its previous action taken on March 22, 1960, which resolution had declared the property involved was surplus, not needed for public purposes, and should be sold.

## PROPOSITION I

■ Plaintiff contends that the question of necessity of taking the 24.61 acres by City for public use was never passed upon by the trial court in the original 1941 condemnation proceedings; and that this legal question is still pending and has

never been passed upon by the trial court in the original proceedings even to this late date.

The original condemnation proceedings were commenced on July 24, 1941, and the record discloses that on August 26, 1941, each of the plaintiffs herein filed an answer specifically denying that it was necessary for City to take and appropriate his or her particular tract for reservoir purposes. On October 9, 1941, the Commissioners filed their report of their appraisal and on October 17, 1941, each of plaintiffs filed a demand for a jury trial. Without setting forth other details of the proceedings, it is sufficient to say that each plaintiff did not challenge the correctness of the proceedings by appeal but accepted and received damages in the amount determined by the Commissioners or the jury for his or her separate tract.

In Henry v. United States, 3 Cir., 46 F.2d 640, the original owner of the land condemned brought an action to vacate the condemnation proceedings nine years after the condemnation proceedings had become final and the award had been paid and accepted. On appeal from a dismissal of the action, the Circuit Court of Appeals, Third Circuit, said: "When a property owner accepts the award of damages for taking his property under eminent domain, he cannot raise the question as to the validity of the proceedings or taking."

In 30 C.J.S. Eminent Domain § 327c, page 201, we find this language:

"The principle of res judicata is applicable in condemnation cases. In accordance with the principles governing the doctrine of res judicata with respect to judgments generally, * * * where an award or judgment is regularly made, and, as held by some authorities, is not appealed from, the rights of the respective parties become definitely fixed thereby, and it is conclusive and binding on all parties of record and, likewise, on their privies and grantees, * * *."

In Section 328, pages 204, 205, of the same volume, it is stated that: "[t]he principles of res judicata apply to final orders, judgments, and decrees in condemnation proceedings as to matters therein litigated. In accordance with the rules governing the application of the doctrine of res judicata to judgments generally with respect to matters concluded thereby, * * * parties and their privies are concluded as to all matters which were put in issue, or might have been put in issue, or were necessarily implied in the decision, in the condemnation proceedings, such as the right to condemn, and the legality of the improvement for which the property was taken, the necessity, quantity, or nature of the property required * * *."

We can only conclude that where a condemnee in a condemnation proceeding does not challenge such proceedings by appeal but accepts the award of the Commissioners or the jury as being the total sum of damages such condemnee is entitled to, the condemnation proceedings are res judicata as to all matters which were put in issue, or might have been put in issue or were necessarily implied in the condemnation proceedings.

We therefore hold the 1941 condemnation proceedings are res judicata as to the necessity for taking the 24.16 acres involved herein.

## PROPOSITION II

Plaintiffs contend that the power of eminent domain is delegated to a City as a public trust and a City holds its rights as a public trustee, and where it possesses information that it is not actually necessary to condemn certain land for any public purpose whatsoever and conceals such information, any action in condemnation to acquire such land on the part of a City is a gigantic fraud practiced upon the private property owner and upon the court.

Condemnation proceedings constitute "adversary proceedings" as that term is usually employed (see People v. Superior Court of Los Angeles County, 47 Cal.App. 2d 393, 118 P.2d 47, 120 P.2d 655) whether the proceedings are or are not contested,

and we find no authority sustaining the proposition that a municipality, as condemnor, owes a greater duty to its condemnee, than does any other condemnor to its condemnee.

The alleged fraud perpetrated upon the plaintiffs and upon the trial court in the 1941 condemnation proceedings is based on the testimony of Mr. V. V. Long, heretofore set out to the effect that City did not condemn the "Stevens Tract: and the "Scrivener Tract". In their brief plaintiffs state that the testimony shows that the potential danger of pollution from the "Stevens Tract" was far, far greater than from the tract herein involved and it is axiomatic if the City did not need the "Stevens Tract", it did not need the 24.61 acre tract. Plaintiff also argues that the City Council, in its resolution adopted in 1960 which declared that said tract was surplus and unnecessary for public use, admits that there was no necessity for taking the 24.61 acres in the 1941 condemnation proceedings.

In Fischer v. Oklahoma City, 198 Okl. 22, 174 P.2d 244, we said: "Need for taking the particular land and the estate therein to be taken, like the issue of compensation for the taking, is judged by the conditions existing at the time of the taking."

The Resolution of the City Council adopted in July, 1941, and all of the 1941 condemnation proceedings, insofar as the instant acreage is concerned, had reference to the acquisition of a fee simple title by City and in no instance did the pleadings, orders or reports relate to a lesser interest. Title 11 O.S.1961, Sec. 293, enacted in 1923, authorized the City to acquire fee simple title to the property. See Springfield v. City of Perry, Okl., 358 P.2d 846, 848. Therefore the 1941 condemnation proceedings vested in City a fee simple title to the 24.61 acre tract.

Since the necessity for taking the 24.61 acre tract must be determined by the conditions existing at the time of the taking in 1941, and we have heretofore determined that the 1941 condemnation proceedings are res judicata as to the necessity for taking, and by such proceedings City acquired fee simple title to the property, the fact that City adopted a Resolution in 1960 declaring such acreage to be surplus and unnecessary for public purposes, or the fact that it may or may not now be necessary for City to retain the acreage for public purposes, are immaterial.

Therefore, the basic and fundamental issue presented is whether plaintiffs are entitled to a vacation or modification of the 1941 condemnation proceedings under Title 12 O.S.1961, Sec. 1031, et seq., which provides, inter alia, that the district court shall have power to vacate or modify its own judgments or orders for fraud practiced by the successful party in obtaining the judgment or order.

This Court has consistently held that fraud which vitiates a judgment and which will authorize a court of equity, in an attack thereon to vacate it, *is a fraud extraneous of the record* by which the court was imposed upon in the proceeding and by which the complaining party was prevented from having his interest fairly presented and considered by the court. See Thigpen v. Deutsch, 66 Okl. 19, 166 P. 901; Webster v. Oklahoma Railway Co., 168 Okl. 306, 32 P.2d 945; Lewis v. Couch, 194 Okl. 632, 154 P.2d 51; and Chisholm v. Stephenson, Okl., 363 P.2d 229. See also United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 92; and Caldwell v. Taylor, 218 Cal. 471, 23 P.2d 758, 88 A.L.R. 1194, 1201.

For the purpose of determining the issues presented, we will assume, without deciding, that potential danger of pollution from the "Stevens Tract" which was not condemned was greater than from the 24.61 acre tract involved herein, and that the City could have protected the reservoir from potential pollution from the 24.61 acre tract. By assuming these facts we place squarely in issue plaintiffs' theory that failure to divulge these facts to the plaintiffs and the trial court when the 1941 condemnation proceedings were had, constitutes a gigantic fraud against plaintiffs and the trial court.

The force and effect of the 1941 proceedings relating to notice to plaintiffs and the trial court wherein the "Stevens Tract" was specifically exempted from the proceedings is not material in determining the issue herein presented.

The ultimate conclusions that would evolve in the instant action if plaintiffs' theory were adopted would be that that City had to condemn the "Stevens Tract" if it condemned the 24.61 acre tract; or that it could not condemn the 24.61 acre tract without condemning the "Stevens Tract". In other words, under plaintiffs' theory, City had no authority to exercise any discretion as to whether it should or should not condemn the "Stevens Tract" if it condemned the 24.61 acre tract; or had no authority to exercise any discretion as to whether it should or should not condemn the 24.61 acre tract if it did not condemn the "Stevens Tract".

In Seba v. Independent School Dist. No. 3 of Dewey County, 208 Okl. 83, 253 P.2d 559, we said that the ordinary rule in condemnation cases is that while the particular property sought to be condemned must be necessary for the proposed project, the condemnor's decision as to the necessity for taking particular property will not be disturbed in the absence of fraud, bad faith or abuse of discretion. In Graham v. City of Tulsa, Okl., 261 P.2d 893, we recognized that a City in the exercise of its discretion and absence of fraud or bad faith, could properly condemn 20 feet from one block and 60 feet from another block where the City desired to extend a dead-end street. In that case we said: "The evidence justifies the taking of only 20 feet off the hospital premises on account of the building, and the occupancy, and the building and occupancy program, of the hospital, which is a large and important hospital of the City of Tulsa."

In Joslin Manufacturing Co. v. City of Province, 262 U.S. 668, 43 S.Ct. 684, 67 L.Ed. 1167, the Supreme Court of the United States held that where a municipal corporation is empowered by the legislature to take property for a water supply within a definitely restricted area, it may take less than the area, but not more.

In White v. City of Pawhuska, 130 Okl. 156, 265 P. 1059, we held:

"The word 'necessity' in connection with condemnation proceedings does not mean an absolute but only a reasonable necessity, such as would combine the greatest benefit to the public with the least inconvenience and expenses to the condemning party and property owners consistent with such benefit."

The testimony of V. V. Long, which plaintiffs rely upon to support their cause clearly demonstrates why City did not condemn the "Stevens Tract" in the 1941 condemnation proceedings. He said it was for just the simple reason of economics; that it was highly developed and it would cost the City considerable money; and it could be controlled fairly well insofar as pollution was concerned.

Although City may have been authorized and could have condemned the "Stevens Tract" this does not mean, as a matter of law, that City had to condemn it. By the same token, the fact that City did not condemn the "Stevens Tract", although it may have been authorized and could have condemned said property, does not mean, as a matter of law, that City could not condemn the 24.61 acre tract without condemning the "Stevens Tract".

We can only conclude that a municipality in the exercise of its powers of eminent domain does not have to include in its condemnation proceedings all the land that it is authorized to take, but may include in such proceedings less land than it is authorized to take. We further conclude that the word "necessity" as the word is employed in condemnation proceedings, does not mean an absolute but only a reasonable necessity, and a municipality in the exercise of its powers of eminent domain, has the power and authority to condemn property, in the absence of fraud, bad faith or an abuse of

discretion, although such property sought to be condemned is not absolutely necessary for public purposes.

Whether or not it was necessary to condemn the 24.61 acre tract is not an issue in this appeal as this is not an appeal from the condemnation proceedings but this appeal involves the vacation or modification of the condemnation proceedings on the alleged ground of fraud.

Since City had, as a matter of law, the authority and power to condemn the 24.61 acre tract without also condemning the "Stevens Tract" and the "Scrivener Tract" and having acted within its authorized powers, the fact that it did not condemn the "Stevens Tract" and "Scrivener Tract" can form no basis for fraud against the plaintiffs or the trial court.

## PROPOSITION III

■ Plaintiffs have filed a motion to dismiss and contend that this Court does not have jurisdiction to hear and determine this appeal for the reason the case-made was not served within fifteen (15) days from date of rendition of the final order appealed from and there was no valid and legal order extending such time. In other words, plaintiffs argue there is a fatal gap of time between the order overruling the motion for a new trial and the chain of extension orders extending the time to make and serve case-made.

We find it unnecessary to consider or determine whether the trial court's orders were or were not sufficient to constitute legal extensions of time to make and serve case-made and by such orders a fatal gap of time did or did not exist, for the following reasons.

On August 15, 1963, an order was issued by a Justice of this Court, under the authority of Title 12 O.S.1961, Sec. 963, retroactively extending the time to make and serve case-made and to file a petition in error and perfect an appeal to this Court. This order was issued upon application of City after City had filed a similar application with the trial court as provided by

Title 12 O.S.1961, Sec. 962, and the trial court had refused to retroactively extend such time.

The August 15, 1963 order issued by a Justice of this Court, contained, inter alia, the following:

"* * * this matter * * * after notice to the adverse parties * * * comes on for hearing * * * the undersigned Justice having heard said application and being fully advised in the premises finds that the time heretofore allowed in which to perfect an appeal has proven insufficient and inadequate and that for good cause shown, said time should be extended in the manner hereinafter set forth and the undersigned Justice further finds that the time in which to make and serve a case made for good cause shown, should be further extended * * *."

Plaintiffs contend that there are two conditions precedent to granting an extension of time retroactively, which are: (1) There must be notice to the adverse party, and (2) there must be evidence introduced at the hearing sufficient to establish good cause for granting an extension.

Plaintiffs do not argue they did not have notice of the proceedings before the Justice but argue that there was no evidence introduced at such hearing sufficient to establish good cause for granting the extension and that the order does not reflect that any evidence was introduced. To sustain their contention that the order did not constitute a legal extension of time, plaintiffs rely upon Kinnison v. State, Okl.Cr., 366 P.2d 969; and Fink v. Fink, 36 OBJ 2253, a Memorandum Decision By Order of this Court citing with approval the Kinnison case.

In the Kinnison v. State case, supra, the trial court's order granting the extension of time specifically stated that "at said hearing no evidence was adduced by the defendant to show any legal reasons why said extension should be granted; * * *." In the body of the opinion, the Court said, "It is manifestly apparent from the order of the court that there was no sworn testimony

upon which the court could exercise its discretion, and assuming that the statement of counsel could be treated as evidence it does not sufficiently establish *good cause* for extending time within which to make and serve casemade."

In the instant case the order under consideration specifically states that notice was given; that a hearing was had; and that *good cause was shown* for the extension of time granted. It was asserted in motion to dismiss appeal and is again urged that the Justice's order extending time to appeal does not recite on its face that any evidence was introduced at the hearing and the record does not disclose evidence from which the Justice could have found good cause for extending the time to appeal. It is stated in briefs that no evidence was heard from which the Justice could conclude that good cause was shown for the extension of time to appeal. This is obviously an attempt to impeach the findings of fact of the Justice who entered the order.

In Greer v. West, 173 Okl. 427, 48 P.2d 1043, we held that facts settled by a justice of this Court under the provisions of 12 O.S.1961, Sec. 965, will be treated by this Court as conclusive.

In the instant case the Justice's order authorizes and invites further consideration by this Court. We have done so and have noticed that the Justice's findings are not impeached by affidavit as is required by Rule 7, of the Supreme Court Rules. 12 O.S.1961, c. 15, Appendix. Carlton v. State Farm Mutual Automobile Ins. Co., Okl., 309 P.2d 286. Under such circumstances it will be presumed the Justice's findings were supported by competent proof; and plaintiff's motion to dismiss is accordingly denied.

## CONCLUSIONS

The 1941 condemnation proceedings, insofar as the same relates to the 24.61 acres herein involved, are legal and proper; no fraud was committed by the City or its agents upon plaintiffs or the trial court; and the judgment of the trial court vacating or setting aside the 1941 condemnation proceedings insofar as the 24.61 acres herein involved is erroneous.

The order issued by a Justice of this Court retroactively extending the time for making and serving case-made and the filing of the proceedings in error constitutes a valid and legal extension of such time and this Court has jurisdiction to hear and determine this appeal.

City has raised several contentions concerning why the judgment in the instant action is erroneous. We find it unnecessary to consider them in view of our decision herein.

Judgment reversed with directions to vacate the order overruling motion for new trial and the judgment herein, and enter judgment for City.